633 So.2d 667 (1993)
Susan Gaushell JONES, Individually and as Natural Tutor of Harper S. Jones
v.
WESTERN PREFERRED CASUALTY COMPANY, et al.
No. 92 CA 2317.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Writ Denied April 4, 1994.
John N. Samaha, Baton Rouge, for plaintiff-appellant Harper Jones.
*668 Richard G. Creed, Jr., Baton Rouge, for defendant-appellee State Farm Mut. Auto. Ins. Co.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a judgment in a suit for damages.

FACTS
On Friday, February 11, 1983, thirteen-year-old Harper S. Jones was visiting his grandparents in Baton Rouge, Louisiana. At approximately 8:30 p.m., Harper left his grandparents' home in Villa Del Rey Subdivision and walked to Cortana Mall to watch a movie, play video games, or other similar activity. While playing video games, Harper became acquainted with Clay Whitney Kent (Kent), a nineteen-year-old.
At approximately 10:30 p.m., Harper left the mall to return to his grandparents home, and Kent offered him a ride home. After leaving the mall, Kent drove to a convenience store where he purchased a six-pack of beer. Thereafter, the two young men drove around Baton Rouge and consumed the beer. Sometime thereafter, Harper began to drive Kent's automobile. At approximately 12:50 a.m., the Kent automobile struck a tree located on a median. As a result of the accident, Harper sustained injuries, and Kent was killed.
On February 10, 1984, Susan Gaushell Jones, individually and as Harper's natural tutor, filed the instant suit for damages. Named as defendants were: Western Preferred Casualty Company (Western Preferred), Kent's liability insurer; Leslie Boyd Kent, Jr. and Frances Johnson Kent, heirs to the Kent estate; and State Farm Mutual Automobile Insurance Company (State Farm), Jones's uninsured motorist insurer. In her petition, Jones alleged that the accident was caused solely by the negligence of Kent. Kent's alleged negligence consisted of his actions in permitting a thirteen-year-old to drive his automobile and in providing alcoholic beverages to a thirteen-year-old, whom he subsequently permitted to drive. State Farm answered Jones's petition and alleged that Harper was negligent in that he operated the Kent vehicle at an excessive rate of speed, operated the Kent vehicle while under the influence of alcohol, failed to maintain control of the Kent vehicle, and failed to maintain a proper look-out for his own safety. Western Preferred and the Kents answered and alleged that Harper was negligent in operating the vehicle at an excessive rate of speed and in failing to maintain control of the automobile.[1]
On joint motion of the parties, a suit filed by the Kents against Jones, in her capacity as Harper's mother and natural tutrix, State Farm, and Western Preferred was consolidated with the instant suit.[2] After trial, the trial court rendered judgment in favor of State Farm and against Jones, dismissing her suit for damages at her costs. From this adverse judgment, Jones appeals, raising the following issues:
1. Was Clay Kent negligent in permitting Jones, a thirteen-year-old to operate his automobile?
2. Was Harper Jones contributorily negligent?
3. Does the uninsured motorist policy issued to Susan Jones provide coverage to Harper?

NEGLIGENCE OF KENT
Jones's action against Kent is based on LSA-C.C. art. 2315, which provides, in part, as follows:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
In the instant case, Jones alleged that Kent was negligent in permitting a thirteen-year-old *669 to drive his automobile and in providing alcoholic beverages to a thirteen-year-old whom he subsequently permitted to drive his automobile.
Generally, an owner of a vehicle is not personally liable for damages which occur while another is operating the vehicle. Harris v. Hamilton, 569 So.2d 1, 3 (La.App. 4th Cir.1990); Friday v. Mutz, 483 So.2d 1269, 1271 (La.App. 4th Cir.1986). Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner is himself negligent in entrusting the vehicle to an incompetent driver. Harris v. Hamilton, 569 So.2d at 3.
Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive. Barnett v. Globe Indemnity Company, 557 So.2d 300, 301 (La. App. 4th Cir.1990); Reuther v. Landreneau, 480 So.2d 376, 379 (La.App. 4th Cir.1985), writ denied, 482 So.2d 628 (La.1986). However, an owner of an automobile who knowingly entrusts it to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle. Pereira Enterprises, Inc. v. Soileau, 551 So.2d 39, 40 (La.App. 1st Cir.1989); Danos v. St. Pierre, 383 So.2d 1019, 1021 (La.App. 1st Cir.1980), affirmed, 402 So.2d 633, 636-37 (La.1981). We note, however, that we can find no authority which places a duty on an owner or lender of an automobile to make an inquiry into one's driving habits or record when no reason exists to place the lender on notice of the borrower's disability or incompetence. Reuther v. Landreneau, 480 So.2d at 379.
In Pereira Enterprises, Inc. v. Soileau, 551 So.2d at 40-42, this court determined that, absent testimony or other evidence to indicate that an owner of an automobile knew or should have known that the driver was intoxicated or incompetent, the owner could not be held negligent for allowing her to drive his automobile. In Pereira Enterprises, the owner of an automobile met the operator in a lounge for the first time. The two were present in the lounge together for approximately forty-five minutes during which time the owner consumed one or two cans of beer. The owner did not know whether the driver had been drinking before he arrived at the lounge; the driver did not appear to be intoxicated in that her speech was not slurred noticeably and she had no difficulty in walking. Her blood alcohol content, however, was .28. The trial court determined that because the driver's blood alcohol content was .28 she would have been obviously impaired such that the owner knew or should have known she was intoxicated and was thus negligent for allowing her to operate his automobile. In reversing the trial court judgment, the appellate court determined that without expert testimony, the trial judge could not determine the effects of a .28 blood alcohol content based upon his own opinion. The appellate court noted that there was no testimony or other evidence to indicate that the owner knew or should have known that the driver was intoxicated or incompetent. During the short period of time they were together, the driver's condition did not appear to concern the owner.
In Reuther v. Landreneau, 480 So.2d at 377-79, despite her parents' specific orders not to permit anyone to operate her car, a teenage girl permitted her boyfriend to drive her car. Shortly thereafter, the boyfriend was involved in an automobile accident. In an action against the girl for negligent entrustment, the court determined that the teenage girl had no reason to believe that her boyfriend was an incompetent driver. The boyfriend testified that the girl had no knowledge of his previous tickets, nor was she aware that his driving privileges had been restricted by his parents because of poor grades. The court determined that, in the absence of evidence to show that the girl had knowledge or any reason to suspect that the boyfriend was a dangerous or incompetent driver, she was not placed on notice to make an inquiry.
In Siemann v. Teston, 517 So.2d 242, 247 (La.App. 1st Cir.1987), the court refused to apply assumption of the risk to a passenger who rode with an intoxicated driver. The *670 court found that the defendant presented no evidence to show that the passenger had knowledge of the driver's intoxicated condition or that, from personal observations of the driver's prior activities and condition, she should have reasonably known of this condition.
In the instant case, Kent can be found negligent if he entrusted his automobile to a driver whom he knew or should have known was either physically or mentally incompetent to operate the vehicle. The question then becomes whether Kent knew or should have known that Harper was an inexperienced and incompetent driver either because of his age or because of his consumption of alcohol prior to his operation of the Kent vehicle. In evaluating the testimony, the trial judge noted that the determination of whether Kent was negligent depended upon whether Kent knew that Harper was thirteen years old. However, even if Kent did not know Harper's age, Kent could have been negligent if he entrusted his vehicle to Harper when he should have known that the boy was incompetent to operate the automobile because of his age and inexperience or because of his alcohol consumption.
Therefore, we must determine whether the trial court erred in determining that Kent was not negligent because he did not know nor should he have known that Harper was physically or mentally incapable of operating a motor vehicle.
In reviewing such a factual finding, the appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
For an appellate court to reverse a trial court's factual finding, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Moreover, where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83. However, where the documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, an appellate court may find manifest error or clear wrongness even in a credibility determination. Rosell v. ESCO, 549 So.2d at 844-845.
In the instant case, the evidence presented at trial consisted of Harper's trial and deposition testimony and the deposition testimony of Jeff Hemphill and Dana Dugas, who were friends of Kent and who had seen him and Harper between 10:30 p.m. and the time of the accident, and Holly Heroman and Robert Lee Andrews, who witnessed the accident.
Harper testified that, at the time of the accident, he was thirteen years old and was living in Shreveport. He came to Baton Rouge on the afternoon of February 11, 1983, to visit his grandparents who resided in Baton Rouge. According to Harper, shortly after arriving in Baton Rouge, he went to Cortana Mall to play video games. He played games until 10:30 or 11:00 p.m.
*671 While playing video games, Harper met Kent, who was watching Harper play the games. Harper and Kent left the mall at approximately the same time, and Kent offered to give Harper a ride home. On the trip to his grandparents' home, Kent and Harper discussed whether Harper was required to go directly home. Harper replied that he was not.
Thereafter, the two rode to numerous places, including two convenience stores, a fast food restaurant, two bowling alleys, and certain high schools, and consumed beer. First, Kent drove to a convenience store and purchased a six-pack of beer. Later during the evening, the two stopped at another convenience store, and Kent purchased a couple of additional cans of beer. Harper testified that he had never had much to drink before that night. Harper consumed at least two of the cans of beer and testified that he felt somewhat light-headed as a result of consuming the alcohol.
During the course of the evening, Kent permitted Harper to operate his automobile. Harper further testified that, prior to that night, he had operated an automobile on only a couple of occasions, once in the presence of his mother. In his deposition, Harper noted that he had very little driving experience. Harper testified that, on one occasion that evening while driving Kent's automobile, he almost hit a car backing out of a parking space and that Kent yelled at him to straighten out the wheel. Harper testified that he was operating the Kent vehicle when it was involved in the accident which killed Kent and injured Harper.
Harper testified that Kent told him that he was nineteen and that he had been in college for a few years. Harper also testified that Kent was a short man and that, at first, he did not believe that Kent was that age. Harper acknowledged that he was fairly big for his age. His deposition testimony revealed that, in 1983, he was approximately six feet tall and was a full head taller than Kent. Harper also testified that he informed Kent that he was thirteen years old and was in the eighth grade.
Harper recalled meeting some of Kent's friends, one of whom admittedly stated that Harper looked as though he were only sixteen. Harper was somewhat embarrassed by the remark, but Harper testified that he did not remember acknowledging the statement or correcting any misunderstanding about his age.
Jeff Hemphill testified that he saw Kent and Harper approximately three times on the evening of February 11, 1993; once at a local fast food restaurant and again at two local bowling alleys. According to Hemphill, Harper told him that he was attending Louisiana Tech or Northeast University. Hemphill testified that he observed Harper and Kent each holding a beer and noticed an eight-pack on the front seat of Kent's car. Hemphill also testified that Harper and Kent were acting obnoxious. Given the behavior he observed, Hemphill testified that he felt Kent should not be driving. He also testified that Harper asked Kent for permission to operate his vehicle.
Dana Dugas, who accompanied Hemphill on the evening of February 11, 1983, testified that she saw Kent and Harper between 9:30 and 10:00 p.m. Kent introduced Harper to them, noting that he was in school in north Louisiana. When she was introduced to Harper, Dugas thought that he was only about fourteen or fifteen years old and told Hemphill that, in her opinion, there was no way that Harper was in college. Dugas testified that, while driving on Airline Highway, the Kent vehicle passed the automobile in which she was riding and swerved back into her lane of travel rather quickly. However, she noted that the maneuver was not performed in a dangerous manner. Other than this incident, she did not observe anything unusual about the driving habits of Kent or Harper that evening.
Robert Lee Andrews was on his way to drop off his girlfriend, Holly Heroman, when he observed an automobile approaching a curve on Woodland Ridge Avenue at a high rate of speed. Andrews estimated the speed of the vehicle to be 80 m.p.h. According to Andrews, as the automobile entered the curve, the driver lost control of the vehicle. The automobile came out of the curve, became airborne, and slid sideways, striking a *672 tree in the median. Andrews further testified that he did not observe the driver apply the brakes nor did he hear any noise which would have suggested that the driver applied the brakes. Andrews attributed the accident to the speed at which the vehicle was travelling. After the accident, Andrews stopped to assist. At that time, he saw the driver of the vehicle, later identified as Harper Jones. Andrews testified that Harper appeared to be about sixteen to eighteen years old and that he was surprised to learn Harper's true age.
Holly Heroman, who accompanied Andrews, testified that she observed the Kent automobile accident shortly before the accident. Heroman estimated that the vehicle was travelling between 70 and 80 m.p.h. The driver apparently lost control of the vehicle and struck the tree. Heroman testified that the driver appeared to have oversteered while attempting to negotiate the curve and that he must have hit the accelerator instead of the brake prior to losing control.
In the instant case, the trial judge was confronted with a situation in which a nineteen-year-old teenager provided beer to a thirteen-year-old teenager and then permitted that thirteen-year-old to operate his vehicle. The testimony at trial shows that Harper and Kent met for the first time on the night of the accident. Although Harper testified that he informed Kent of his age, the trial court determined that this testimony was not worthy of belief in light of the testimony of two disinterested witnesses, Dana Dugas and Jeff Hemphill, who testified that they were told that Harper was in college.
After carefully reviewing the record under the appropriate standard of review, we cannot say that the trial court was manifestly erroneous in finding that the evidence failed to show that Kent knew or should have known that Harper was mentally or physically incompetent to operate an automobile. The evidence presented at trial failed to show that Harper appeared to be either physically or mentally incompetent to drive.
Although Harper was only thirteen years old, he was six feet tall and appeared to be more mature than his tender years would suggest. Harper's testimony revealed that prior to the night of the accident he had only operated an automobile on a couple of occasions, but there was no evidence to suggest that Harper informed Kent of this fact. It is apparent from the record that, despite his lack of prior driving experience, Harper successfully operated Kent's vehicle for several hours prior to the accident. In addition, other than the incident which occurred when Harper was backing the Kent vehicle out of a parking space, there is no evidence of record to show that defendant was driving in an unsafe manner prior to the accident. Moreover, there is no expert testimony of record to suggest that the accident was caused by driver inexperience.
Further, although it is undisputed that Harper consumed at least two cans of beer between 10:00 p.m. and 12:50 a.m., there was no evidence to show that Harper was intoxicated or that his abilities were impaired as a result of his consumption of alcohol. Harper's own testimony failed to reveal that he felt the effects of the alcohol, except for a brief period of dizziness which appeared to pass quickly. Moreover, there was no evidence to establish Harper's blood alcohol content or to suggest that the consumption of at least two cans of beer over a four-hour period would seriously impair a non-experienced driver. Nor was there any expert testimony or other evidence to establish that his consumption of alcohol caused the accident.
Further, in the absence of evidence in the record to show that Kent had knowledge or any reason to suspect that Harper was a dangerous or incompetent driver, we cannot say that he was placed on notice to make an inquiry.
We note that, under normal circumstances, the act of providing a minor child with alcohol and then entrusting a motor vehicle to that child, who is below the minimum age to legally operate a vehicle, may give rise to negligence on the part of the lender of an automobile. However, in the instant case, based upon the record before us, we find that a reasonable factual basis exists for the trial court's finding that Kent was not negligent for entrusting his automobile to Harper and *673 that the record does not establish that this finding is clearly wrong. This decision, however, is limited to the facts, or lack thereof, contained in the record in the instant case.
Because we affirm the trial court's finding that Kent was not negligent, we find it unnecessary to address Jones's remaining assignments of error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of State Farm and against Jones, dismissing Jones's action for damages is affirmed. Costs of this appeal are assessed against Jones.
AFFIRMED.
GONZALES, J., concurs and assigns reasons.
GONZALES, Judge, concurring.
I respectfully concur. The majority describes its task on review as having to "determine whether the trial court erred in determining that Kent was not negligent because he did not know nor should he have known that Harper was physically or mentally incapable of operating a motor vehicle." However, the transcript of the trial court's oral reasons is completely silent on the issue of negligent entrustment. The trial court's reasons for judgment are as follows:
The essential question is, did Clay Kent know that [Harper Jones] was 13 years old, because everything stems from that essential question. Clay Kent's negligence would have been letting a 13-year-old drive and then getting alcohol for a 13-year-old. So it becomes extremely important whether or not he knew he was 13. Plaintiff has the burden of proving that particular fact, and I've got two witnesses, Jeff Hemphill and Dana Dugas, although they are by depositions, I don't have to don't look at them and can't tell whether they are telling the truth, they say the identical thing. I keep trying to figure out what their motive is to lie about it, and considering the overall circumstances, it's my conclusion that [plaintiff hasn't] proved more probable than not that he told [Clay Kent] he was 13 years old. His testimony that I saidhe said he was 13 years old can't be rebutted by the deceased, but the circumstances that these two different people say he alleged he was in college indicate that he told them falsely later, which would indicate that he probably didn't tell Mr. Kent earlier. So I don't think [plaintiff has] carried [his] burden of proof of showing that he in fact told Clay Kent he was 13 years old. And since it's 50/50, plaintiff will lose and I will render judgment in favor of defendant and against plaintiff at plaintiff's costs.
As can be seen from the above reasons, the trial court based his judgment on Jones's failure to prove that Kent was aware of Jones's age, and thus, negligent for allowing him to drive. However, the trial court's judgment is silent on the issue of Kent's possible negligence for allowing Jones, regardless of his age, to drive while under the influence of alcohol.
Silence in a judgment as to any part of a demand made in litigation is construed as a rejection of that part of the claim. Erich Sternberg Realty Company, Inc. v. Louisiana Tax Commission, 560 So.2d 868, 876 n. 7 (La.App. 1st Cir.), writ denied 567 So.2d 107 (La.1990); Harmon v. Schamberger, 536 So.2d 579, 581 n. 1 (La.App. 1st Cir.1988); Day v. Warren, 524 So.2d 1383, 1385 n. 4 (La.App. 1st Cir.1988). Thus, the trial court's silence with regard to Jones's claim that Kent was negligent for allowing Jones to drive after consuming alcohol amounts to a rejection of this claim.
Had I been the trial judge in this case, I would have found that Clay Kent had sufficient knowledge to know that providing alcohol to Harper Jones would impair his driving ability. However, on review, "[t]he issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). To reverse, we would have to find from the record that a reasonable factual basis does not exist for the presumed finding of the trial court that Clay Kent did not know that Harper Jones was impaired. The only factual basis in the record to support *674 this presumed finding is that Harper Jones drove Kent's car for several hours without significant incident after having consumed alcohol. Given the strict constraints of Stobart, I cannot say that this is an unreasonable factual basis for the trial court's presumed finding.
NOTES
[1] On the date of the accident, Western Preferred had in full force and effect a policy of liability insurance which covered Clay Kent and protected him against the liability sought to be imposed. Western Preferred was subsequently placed under receivership and is insolvent.
[2] State Farm subsequently paid the Kents $75,000.00 under its liability policy, and the Kent's suit is not before us on this appeal.