693 So.2d 330 (1997)
Charlie R. RISER, Plaintiff-Appellee,
v.
ACADIANA LIMOUSINE SERVICE, INC. and Aeray Guilliot, Defendants-Appellants.
No. 96-1687.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
*332 Gregory Kent Moroux, J. Minos Simon, Miles A. Matt, Lafayette, for Charlie R. Riser.
Thomas Anthony Budetti, Lafayette, for Acadiana Limousine Service, Inc., et al.
Michael Edward Parker, Lafayette, for Acadiana Dodge, Inc. and Chrysler Ins. Co.
Kraig Thomas Strenge, Lafayette, for Aeray Guilliot.
James S. Holliday, Jr., Baton Rouge, for United Service Ins. Co.
Before DOUCET, C.J., and PETERS and SULLIVAN, JJ.
DOUCET, Chief Judge.
Three parties appeal the trial court's judgment in this case arising out of a collision between a van and a pickup truck.
On April 4, 1994, Charlie Riser was driving his 1984 pickup truck on Evangeline Thruway (Highway 90) in Lafayette, Louisiana, on his way from Lafayette to New Iberia. Evangeline Thruway is a four lane highway divided by a median. He was driving in the left inside lane at about 50 miles per hour when he was struck without warning by the van driven by Aeray Guilliot and rented from Acadiana Dodge. The pickup apparently flipped over several times. Both Riser and Guilliot were taken to the hospital. Riser was treated for injuries to his left arm, wrist and hand. As a result of tests done at the hospital, Guilliot was found to have a blood alcohol level of .23.
As a result of the accident, Riser sued Guilliot, Acadiana Dodge, its insurer, Chrysler Insurance Company (Chrysler) and Guilliot's employer, at first thought to be Acadiana Limousine Service, Inc. and later found to be Acadiana Crew Change, Inc. (Crew Change). He also sued James Feigler, the sole stockholder in Crew Change and the person in whose name the van was rented from Acadiana Dodge. Riser alleged that Crew Change is Feigler's alter ego. The matter came to trial in 1996. Questions regarding insurance coverage were tried to the judge. The trial judge ruled that Aeray Gilliot was operating the van with the permission of Acadiana Dodge, that Guilliot was covered by the Chrysler policy introduced into the record, that the policy affords coverage for punitive damages and that Chrysler had a duty to *333 defend Guilliot. For its part, the jury found that Riser had suffered damages of $400,000.00 plus past medical expenses. The jury found that Guilliot's intoxication was a cause of the accident and that his actions showed wanton and reckless disregard for the rights and safety of others. It made a punitive damage award of $100,000.00. The jury apportioned fault for the accident 20% to Guilliot and 80% to Acadiana Dodge.
Chrysler and Acadiana Dodge appeal. Guilliot and Riser answer the appeal.

COVERAGE
First, Chrysler cites an endorsement to its policy which states that coverage includes: "Only the autos you own that are enrolled in the Chrysler Credit Corporation DRAC Program." Chrysler argues that since the plaintiff did not prove that the van was enrolled in the Chrysler Credit DRAC[1] Program, he failed to carry his burden of showing insurance coverage. Therefore, Chrysler argues the plaintiff is not entitled to recover under the policy. However, we find that the evidence of record is sufficient to show that the van was covered by the policy. First, Chrysler and Acadiana Dodge stipulated to the authenticity of the policy. The testimony at trial showed that all rental cars were covered by insurance coverage. The policy was admitted into evidence without objection by Chrysler or Acadiana Dodge as the policy which provided coverage for Acadiana Dodge's rental cars. Further, it was supplied to the plaintiff by Acadiana Dodge as the policy which covered all of Acadiana Dodge's rental vehicles. The van which was involved in the accident was owned by Acadiana Dodge and used as a rental car.

PERMISSIVE USE
Chrysler and Acadiana Dodge next argue that the trial judge erred in finding that Guilliot was a permissive user rather than a lessee of the vehicle. This is a finding of fact which may not be disturbed in the absence of manifest error.
The determination of whether Guilliot was a permissive user or a lessee requires examination of the rental arrangement between Guilliot's boss, James Feigler, sole stockholder of Crew Change, and Acadiana Dodge. Crew Change is in the business of transporting work crews to, primarily, oil field related job sites. In connection with this business, Crew Change rents vans from a variety of local car rental businesses, among them Acadiana Dodge. Crew Change often begins its trips to job sites at times outside normal business hours, usually in the very early morning hours. In order to obtain vehicles without paying for unneeded rental periods, Feigler reached an arrangement with Acadiana Dodge whereby keys to the vehicle to be rented were picked up during business hours but the rental period did not begin until the beginning of the trip. Vehicles were rented in Feigler's name because it was Chrysler's policy to rent only to individuals rather than to corporations. The rental was charged either to Feigler's personal credit card or to a credit card issued in the name of one of his corporations. On the date of the accident, Feigler was out of town. It is undisputed that Guilliot had permission to arrange for rental of vehicles as needed by Crew Change. Guilliot picked up the keys of the van on the morning of April 4, 1994. He was scheduled to use the van to take a crew to a job site at 4:00 a.m. on April 5, 1994. Guilliot picked up the van at about 10 p.m. on April 3, 1994. Guilliot admits that he was drinking before picking up the van. He stated that his intention was to have the van serviced and to park it in front of his house so that he could leave directly from home in the morning. He alleges that this was a normal practice in connection with the rented vehicles.
The testimony with regard to the time at which the rental agreement started is in conflict. Wayne Schumock was the rental manger for Acadiana Dodge from April 1993 though April 1996. He stated that the lease on the van started at 4:00 a.m. on April 5, 1994. Feigler was charged for one day of use even though the vehicle was not under lease at the time of the accident. Schumock stated that if the vehicle left the lot prior to the time stated on the rental contract, then the contract would be revised to state the *334 new time. He stated that on another occasion when Feigler needed the vehicle early he called and had the beginning time of the rental contract changed. Feigler, however, testified that the arrangement with Acadiana Dodge was that the contract began when the job mission began. Guilliot stated that it was a regular practice to pick up the vehicle after business hours but before the beginning of the job mission for which the vehicle had been rented.
From this testimony, the trial judge apparently concluded that, while the van was not rented to Feigler at the time of the accident, Feigler and his employees had permission to use the vehicle.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo....
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong....
Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). (Citations omitted.) (Footnote omitted.)
Given the conflict in testimony, and the absence documentary evidence supporting or contradicting testimony of any witness, we cannot say that the trial judge erred in crediting the testimony of Feigler and Guilliot. Therefore, we find no error in the conclusion that Guilliot was using the vehicle with the implied consent of Acadiana Dodge and was not a lessee of the vehicle. Having so found, we also affirm the trial judge's finding that Chrysler had a duty to defend Guilliot. Guilliot in his answer to the appeal asserts that Chrysler should be assessed with additional attorney's fees on appeal.
An appellee's request for increased attorney's fees is usually granted when:
1) the appellant appeals but obtains no relief;
2) the appeal requires more work from the appellee; and
3) the appellee requests such an increase in accordance with proper appellate procedure.

Stacks v. Mayflower Transit, Inc., 95-693 (La.App. 3 Cir. 11/02/95); 664 So.2d 566; George v. M & G Testing & Serv., Inc., 95-31 (La.App. 3 Cir. 07/19/95); 663 So.2d 79, writ denied, 96-C-0039 (La.3/08/96); 669 So.2d 403.
Lavespere v. Brasher, 96-190, pp. 7-8 (La. App. 3 Cir. 10/9/96); 688 So.2d 1166.
*335 Guilliot's appeal meets the requirements laid out in Lavespere. Accordingly, we will grant attorney's fees on appeal of $2000.00. DIRECTED VERDICT ON FAULT OF GUILLIOT
Guilliot, in his answer to the appeal, asserts that the trial court erred in granting a directed verdict finding Guilliot at fault in the accident. This court in Hebert v. Podiatry Insurance Co. of America, 96-567, p. (La.App. 3 Cir. 10/9/96); 688 So.2d 1107, cited the first circuit decision in Belle Pass Terminal, Inc. v. John, Inc., 92-1544, p. 14 (La.App. 1 Cir. 3/11/94); 634 So.2d 466, 478, writ denied, 94-906 (La.6/17/94); 638 So.2d 1094, concerning the rules applicable to a motion for directed verdict:
A motion for a directed verdict is appropriately granted when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant's opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary verdict. Adams v. Travelers Insurance Company, 589 So.2d 605, 608 (La. App. 2nd Cir.1991); Armstrong v. Lorino, 580 So.2d 528, 533 (La.App. 4th Cir.), writ denied, 584 So.2d 1166 (La.1991); Barnes v. Thames, 578 So.2d 1155, 1162 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La. 1991). However, if there is substantial evidence opposed to the motion, that is, evidence of such a quality and weight that reasonable and fair-minded men exercising impartial judgment might reach different conclusions, the motion should be denied, and the case should be submitted to the jury. Adams v. Travelers Insurance Company, 589 at 608; Cliburn v. Colonial Penn Insurance Company, 583 So.2d 103, 105 (La.App. 3rd Cir.1991); Armstrong v. Lorino, 580 So.2d at 533.
A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Barnes v. Thames, 578 So.2d at 1162. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827, 849 (La.App. 1st Cir.), writs denied, 605 So.2d 1117, 1119 (La.1992); Cliburn v. Colonial Penn Insurance Company, 583 So.2d at 105. Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the claims. Adams v. Travelers Insurance Company, 589 So.2d at 608.
In the present case, the trial court did not err in granting defendants' motion for directed verdict. Even considering the evidence in the light and with all reasonable inferences most favorable to Guilliot, it is clear that Guilliot was at fault in the accident. Guilliot argues that the jury could reasonably have found that Acadiana Dodge was entirely at fault in the accident. In light of the evidence of record, we cannot agree that Acadiana Dodge could reasonably have been found to be 100% at fault in the accident. Fault is to be assessed where a party's conduct is a cause-in-fact of harm to another. An act or omission is considered to be a cause-in-fact of harm to another if it was a "substantial factor" in bringing about the accident. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Given the evidence of record, the only reasonable conclusion is that Guilliot's actions were a substantial factor in bringing about the accident. Consequently, we find that the trial judge did not abuse his discretion in granting a directed verdict finding Guilliot at fault in the accident.

NEGLIGENT ENTRUSTMENT AND APPORTIONMENT OF FAULT
Chrysler further argues that the court's failure to give its proposed jury charge on negligent entrustment resulted in an incorrect apportionment of fault.
A trial judge has a duty to give instructions which properly reflect the law applicable in light of the facts of a particular case. Barnett v. New Orleans Public Service, Inc., 489 So.2d 452, 455 (La.App. 4th Cir. 1986). In order to fulfill that duty, he must both require that the jury consider only the correct law and avoid confusing the jury. Cuccia v. Cabrejo, 429 So.2d 232, *336 235 (La.App. 5th Cir.), writ denied 434 So.2d 1097 (La.1983).
Guilfore v. D.H. Holmes Co., Ltd., 93-0076, p. 10 (La.App. 4 Cir. 1/13/94); 631 So.2d 491, 498, writ denied, 94-0376 (La.4/4/94); 635 So.2d 1125.
The trial judge in this case failed to instruct the jury with regard to negligent entrustment in spite of the fact that the plaintiff pled negligent entrustment as one of his theories of recovery from Acadiana Dodge. This omission constitutes a failure to give an instruction which properly reflects the law applicable in light of the facts of this case. However, since we have the entire record before us, we need not remand the matter for a new trial. Therefore, we will undertake a de novo review of the evidence on this point to determine the appropriate apportionment of fault in consideration of the law on negligent entrustment. Whiddon v. Hutchinson, 94-2000 (La.App. 1 Cir. 2/23/96); 668 So.2d 1368, writs denied, 96-0731, 96-0775 (La.5/10/96); 672 So.2d 923.
The court in Jones v. Western Preferred Cas. Co., 633 So.2d 667, 669-670 (La.App. 1 Cir.1993), writ denied, 94-0273 (La.4/4/94); 635 So.2d 1123, outlined the law concerning negligent entrustment:
Generally, an owner of a vehicle is not personally liable for damages which occur while another is operating the vehicle. Harris v. Hamilton, 569 So.2d 1, 3 (La. App. 4th Cir.1990); Friday v. Mutz, 483 So.2d 1269, 1271 (La.App. 4th Cir.1986). Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner is himself negligent in entrusting the vehicle to an incompetent driver. Harris v. Hamilton, 569 So.2d at 3.
Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive. Barnett v. Globe Indemnity Company, 557 So.2d 300, 301 (La.App. 4th Cir.1990); Reuther v. Landreneau, 480 So.2d 376, 379 (La.App. 4th Cir.1985), writ denied, 482 So.2d 628 (La. 1986). However, an owner of an automobile who knowingly entrusts it to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle. Pereira Enterprises, Inc. v. Soileau, 551 So.2d 39, 40 (La.App. 1st Cir.1989); Danos v. St. Pierre, 383 So.2d 1019, 1021 (La.App. 1st Cir.1980), affirmed, 402 So.2d 633, 636-37 (La.1981). We note, however, that we can find no authority which places a duty on an owner or lender of an automobile to make an inquiry into one's driving habits or record when no reason exists to place the lender on notice of the borrower's disability or incompetence. Reuther v. Landreneau, 480 So.2d at 379.
In Pereira Enterprises, Inc. v. Soileau, 551 So.2d at 40-42, this court determined that, absent testimony or other evidence to indicate that an owner of an automobile knew or should have known that the driver was intoxicated or incompetent, the owner could not be held negligent for allowing her to drive his automobile. In Pereira Enterprises, the owner of an automobile met the operator in a lounge for the first time. The two were present in the lounge together for approximately forty-five minutes during which time the owner consumed one or two cans of beer. The owner did not know whether the driver had been drinking before he arrived at the lounge; the driver did not appear to be intoxicated in that her speech was not slurred noticeably and she had no difficulty in walking. Her blood alcohol content, however, was .28. The trial court determined that because the driver's blood alcohol content was .28 she would have been obviously impaired such that the owner knew or should have known she was intoxicated and was thus negligent for allowing her to operate his automobile. In reversing the trial court judgment, the appellate court determined that without expert testimony, the trial judge could not determine the effects of a .28 blood alcohol content based upon his own opinion. The appellate court noted that there was no testimony or other evidence to indicate that the owner knew or should have known that the driver *337 was intoxicated or incompetent. During the short period of time they were together, the driver's condition did not appear to concern the owner.
In Reuther v. Landreneau, 480 So.2d at 377-79, despite her parents' specific orders not to permit anyone to operate her car, a teenage girl permitted her boyfriend to drive her car. Shortly thereafter, the boyfriend was involved in an automobile accident. In an action against the girl for negligent entrustment, the court determined that the teenage girl had no reason to believe that her boyfriend was an incompetent driver. The boyfriend testified that the girl had no knowledge of his previous tickets, nor was she aware that his driving privileges had been restricted by his parents because of poor grades. The court determined that, in the absence of evidence to show that the girl had knowledge or any reason to suspect that the boyfriend was a dangerous or incompetent driver, she was not placed on notice to make an inquiry.
In Siemann v. Teston, 517 So.2d 242, 247 (La.App. 1st Cir.1987), the court refused to apply assumption of the risk to a passenger who rode with an intoxicated driver. The court found that the defendant presented no evidence to show that the passenger had knowledge of the driver's intoxicated condition or that, from personal observations of the driver's prior activities and condition, she should have reasonably known of this condition.
In this case, Acadiana Dodge can be found negligent if it entrusted its automobile to a driver who it knew or should have known was either physically or mentally incompetent to operate the vehicle. The question then becomes whether Acadiana Dodge knew or should have known that Guilliot was an incompetent driver because of his consumption of alcohol prior to taking the van.
There is no evidence that Guilliot was drunk or had been consuming alcohol prior to picking up the keys to the van. Nor was there any evidence that Guilliot showed any outward signs of alcohol consumption at the time he picked up the van. Further, the evidence is uncontradicted that, while Guilliot had had numerous previous contacts with the rental department of Acadiana Dodge, no one there was aware that he had a drinking problem. Wayne Schumock testified that he had had no trouble with any of Feigler's employees or the way they handled Acadiana Dodge's vehicles. He further testified that none of them had ever given him reason to suspect that they were drinking and driving. Therefore, it appears that the jury erred in assessing any degree of fault to Acadiana Dodge. The judgment of the trial court is, therefore, amended to reflect no fault on the part of Acadiana Dodge. However, this in no way alters the liability of Chrysler for the entire amount of the judgment.

QUANTUM
Chrysler, Acadiana Dodge and Guilliot argue that the jury awarded an excessive amount of damages to Riser.
The supreme court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 explained the appropriate standard of review applicable to general damage awards:
In Reck v. Stevens, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art.1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion *338 in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. [Footnote omitted.]
After reviewing the evidence concerning the damages sustained by Riser, we cannot say that the jury abused its discretion by awarding $400,000.00 plus medical expenses.
The evidence with regard to the injuries suffered, treatment and recovery is undisputed. Riser is an electrician. He was a music major in college. He worked as a part-time professional musician prior to the birth of his daughter. He continued to play as an amateur. His left wrist and hand were severely and permanently injured in the accident. After the accident, Riser was taken to the emergency room at Our Lady of Lourdes Hospital in Lafayette. He was diagnosed as having fractures of the ulna, the large inner bone of the forearm, the greater multangular of the left wrist and a nondisplaced fracture of the radius styloid. Additionally, he was found to have a severe laceration and abrasion of the left forearm and a severe laceration at the base of the left thumb. The median nerve was lacerated at the left wrist level. Muscle and tendons were lacerated. His fractured ulna was repaired by putting in a metal plate. The median nerve and the lacerated tendons were surgically repaired by Dr. Thomas Dewey.
In June 1994, Riser began being treated by Dr. Robert Morrow, an orthopedist. Dr. Morrow testified that the long term problem for Riser was the median nerve damage. The median nerve supplies sensation to the fingertips. At the time he began treatment with Dr. Morrow, Riser was having problems moving his wrist and fingers. The tips of his thumb, index and middle fingers as well as the lower end of his palm and wrist area were hypersensitive, the slightest touch causing severe pain. Dr. Morrow recommended an aggressive regime of physical therapy. Riser was referred to Manilal R. Gala, a physical therapist.
Riser underwent physical therapy for his left hand, arm and wrist three to five days a week for up to four hours a day from June 1994 through April 1995. The testimony of both Riser and Gala was that the therapy was painful, extremely so at the beginning, with some diminution of pain over time. By the time therapy was ended, Riser had obtained a good range of motion and improved muscle strength. His problem with hypersensitivity was reduced but could not be eliminated. He still had problems grasping objects. His thenar muscle was atrophied. *339 Dr. Morrow recommended a TENS unit to stimulate the nerve. Dr. Morrow opined that Riser would have permanent problems with pain. He further found a two point discrimination loss in the tip of the left thumb, permanent muscle loss and a permanent sensory and motor loss.
Riser testified that, while he can still play his main instrument, the trombone, he is now unable to play any stringed instrument, keyboard instrument, or any instrument requiring the use of the fingers of his left hand. He states that the hand is visibly disfigured. Given this testimony, we cannot say that the jury's award was so high as to be an abuse of discretion. Therefore, the award of damages is affirmed.

PUNITIVE DAMAGES
Each of the parties has raised issues regarding punitive damages. We will first consider Guilliot's assertion that the plaintiff failed to prove his entitlement to punitive damages. La.Civ.Code art. 2315.4 provides for punitive damages:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
Guilliot argues that Riser failed to prove that Guilliot's intoxication caused the accident. He cites the testimony of John Richard and Jude Warfel. Richard and Warfel were traveling behind Guilliot when the accident happened. They testified that they did not see the van swerving or driving out of control before the accident. They testified that the van was driving about 70 m.p.h. down Evangeline Thruway. They saw the van's turn signal go on, then they saw glass flying and sparks in the dark, although they could not see what he had hit. The medical records reflect that Guilliot had a blood alcohol level of .23 when he was tested at the hospital at midnight. Patrick Kent, director of the federally and state funded alcohol abuse treatment and research system for southeast Louisiana, testified that this translated to a blood alcohol content of .25 at the time of the accident. He stated that, regardless of drinking history and level of addiction, this blood alcohol level would prevent anyone from adequately controlling a vehicle. He testified that with this level of blood alcohol, one's ability to judge depth is profoundly reduced, consequently reducing the ability to assess the risk of changing lanes or the hazard of proximity to other vehicles. Disregard for the consequences of one's behavior results with a blood alcohol level of this magnitude. He felt that because of the changes in depth perception, vision, thinking processes, and ability to draw conclusions from visual input, Guilliot could have hit another car without any precipitating factor other than his own inability to change lanes. Kent stated that the speed at which Guilliot was traveling reinforced his opinion that Guilliot's intoxication was a precipitating factor in the accident. The police officer who arrived at the scene of the accident to investigate testified that he could smell the alcohol on Guilliot and that Guilliot was incoherent, although he could not say whether the incoherence was related to alcohol or injury.
Whether the elements requisite to recovery under LSA-C.C. art. 2315.4 have been proven is a question of fact, not to be set aside in the absence of manifest error. Brumfield v. Guilmino, 93-0366, p. 10 (La. App. 1st Cir. 3/11/94), 633 So.2d 903, 908, writ denied, 94-0806 (La.5/6/94), 637 So.2d 1056; Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993).
Angeron v. Martin, 93-2381, p. 4 (La.App. 1 Cir. 12/22/94); 649 So.2d 40, 43.
Given the testimony at trial, we cannot say that the jury erred manifestly in concluding that Guilliot's intoxication was a cause of the accident or that he showed "wanton or reckless disregard for the rights and safety of others."
Chrysler argues that the trial court erred in finding that its policy covered punitive damages. Chrysler cites a provision of its policy which states that:
"this policy does not apply:
2 to fines and penalties arising out of the violation of a statute or ordinance."
*340 Chrysler argues that punitive damages are in the nature of a fine or penalty and that, as a result, they are excluded from coverage under the policy. However, as plaintiff points out in brief, the policy, in excluding coverage of punitive damages under its uninsured/underinsured motorist coverage, specifically mentions punitive or exemplary damages.
Insurance policies should be construed to effect, not deny, coverage. Any ambiguity in an insurance policy exclusion should be narrowly construed in favor of coverage. Yount v. Maisano, 627 So.2d 148, 151 (La.1993); Ballex v. Naccari, No. 95-1339 (La.App. 4th Cir. 9/15/95), 663 So.2d 173, 175.
Lawson v. Straus, 95-2518, p. 2 (La.App. 4 Cir. 10/2/96), 684 So.2d 959, 961.
Given the specific exclusion of punitive damages in the UM section of the policy, we cannot say that the provision cited by Chrysler unambiguously excludes punitive damages from coverage under the liability section. Therefore, the policy must be interpreted in favor of coverage. Therefore, the trial court's determination that the policy covers punitive damages is affirmed.
Guilliot, Chrysler and Acadiana Dodge all contend that the punitive damage award of $100,000 is excessive. Riser argues that the award is inadequate. "The fact finder has much discretion in fixing exemplary damage awards. Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94); 633 So.2d 903, writ denied, 94-0806 (La.5/6/94); 637 So.2d 1056." Blackshear v. Allstate Ins. Co., 94-765, p. 10 (La.App. 3 Cir. 12/7/94); 647 So.2d 589, 595. In light of the injuries to Riser, and Guilliot's degree of intoxication, we find no abuse of discretion in this award.
Riser contends that the trial court erred in refusing to allow evidence of the limits of liability available under the Chrysler policy. The jury, he argues, was swayed by the evidence of Guilliot's poverty to give a lower award of punitive damages. He argues that, had the jury known the amount of coverage available, it would have made a larger award of punitive damages. However, having found that the award of punitive damages was appropriate and not an abuse of discretion, we pretermit consideration of this issue. The error, if any, is harmless.

CONCLUSION
For these reasons, the judgment of the trial court is amended to assess the fault entirely to Guilliot. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED AS AMENDED.
NOTES
[1] DRAC is an acronym for Dealer Rent-A-Car.