774 So.2d 1215 (2000)
Richard L. STOKES, and Genia C. Stokes
v.
Darrell W. STEWART, Tommy Perkins, Jr., Sphere Drake Insurance, Safeway Insurance Company, UnionAmerica Insurance Company, and Credit General Insurance Company.
No. 99 CA 0878.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*1216 Mary Heck Barrios, Denham Springs, for Plaintiffs-Appellees Richard L. and Genia C. Stokes.
Keith M. Borne, Lafayette, for Defendants-Appellants Safeway Insurance Company and Tommy Perkins, Jr.
John Culotta, Metairie, for Defendant Sphere Drake Insurance Co.
James A. Prather, New Orleans, for Defendant Credit General Insurance Co.
*1217 Before: LeBLANC, FOIL, GONZALES, WHIPPLE, and GUIDRY, JJ.
GUIDRY, J.
In this personal injury suit, appellants, Tommy Perkins, Jr. and Safeway Insurance Company (Safeway), appeal the trial court's judgment in favor of appellees, Richard L. Stokes and Genia C. Stokes. We affirm in part, reverse in part, and render.

FACTS AND PROCEDURAL HISTORY
On the morning of April 9, 1995, Mr. Stokes' dump truck was struck head-on by a 1985 Cadillac Deville which left its lane of travel, crossed two traffic lanes and a turning lane, and entered the lane in which Mr. Stokes was driving. The Cadillac was driven by Darrell Stewart and was owned by Mr. Perkins. Mr. Stewart was killed in the collision. Urine samples taken from Mr. Stewart by the coroner were later tested and cocaine was detected in the urine. Additionally, analysis of blood samples taken from Mr. Stewart revealed that he had a blood "ethyl alcohol level of .10 grams percent."
On July 26, 1995, appellees filed suit, naming as defendants the estate of Mr. Stewart; Mr. Perkins; Safeway, Mr. Perkins' insurer; Sphere Drake Insurance and UnionAmerica Insurance Company (collectively, "property insurance carriers"), Mr. Stokes' property damage insurers, and Credit General Insurance Company (Credit General), Mr. Stokes' uninsured/underinsured motorist carrier.[1] A bench trial was held September 9-10, 1996. A judgment was rendered in favor of appellees on November 4, 1996. Notice of the judgment was mailed November 18, 1996.
Motions for new trial were filed by appellees and Credit General on November 20, 1996. Likewise, Safeway filed a motion for new trial on November 25, 1996. Additionally, Safeway and Mr. Perkins filed an oral motion to recuse Judge M. Douglas Hughes from the case. The motions were heard on February 24, 1997, and an order granting the motions for new trial and recusal was issued at the hearing and signed on March 18, 1997.
The case was re-allotted to Judge Robert H. Morrison. A new trial was held on April 2, 1998. All the evidence from the original trial was reintroduced at the new trial. In addition, new testimony of Sergeant Darrell Arceneaux, the investigating officer, and Mr. Stokes was taken.
A judgment in favor of appellees and against Credit General and appellants was rendered on July 21, 1998, and signed October 27, 1998.[2] Pursuant to this judgment, Mr. Stokes was awarded $10,000 .00 in general damages, $10,757.78 for property damage, $600.00 for towing expenses, and $10,000.00 for loss of income, subject to a credit of $10,000.00 in favor of Safeway for the amount previously paid to Mr. Stokes by Safeway. Mr. Stokes was also awarded $25,000.00 in punitive damages, and Mrs. Stokes was awarded $2,500.00 for loss of consortium.

ASSIGNMENTS OF ERROR
Mr. Perkins and Safeway now appeal from this judgment and assert the following assignments of error:
I. The Honorable Trial Court erred in concluding that Tommy Perkins, Jr. was vicariously liable for damages emanating from the negligent acts of Darrell *1218 Stewart, both from a compensatory, as well as a punitive standpoint.
II. The Honorable Trial Court erred in awarding plaintiff, Richard Stokes, $10,000 in general damages and plaintiff, Genia C. Stokes, $2,500 for loss of consortium.
III. The Honorable Trial Court erred in awarding plaintiff, Richard Stokes, $10,000 in lost income.
IV. The Honorable Trial Court erred in concluding that plaintiffs were entitled to an award of punitive damages in the amount of $25,000.

Liability
At trial, Sergeant Darrell Arceneaux, the officer that investigated the accident, testified that he called Mr. Perkins the afternoon of the accident. The purpose of the call was to determine if Mr. Perkins owned the Cadillac and to get some background information as to how Mr. Stewart obtained the car. According to Sgt. Arceneaux, Mr. Perkins informed him that between 9:00 and 9:30 a.m., he awakened Mr. Stewart to go to Payless Cashways to pick up some building materials for Mr. Perkins. According to Sgt. Arceneaux, Mr. Perkins said that he gave Mr. Stewart money for the materials and for gas and loaned him the Cadillac. Sgt. Arceneaux also testified that Mr. Perkins voluntarily informed him that Mr. Stewart was a crack cocaine user.
Mr. Stokes' testimony corroborated that Mr. Perkins had knowledge of Mr. Stewart's substance abuse problem before loaning him the car. According to Mr. Stokes, he spoke with Mr. Perkins by telephone a day or two after the accident. Mr. Stokes testified that during this conversation, Mr. Perkins said that he knew Mr. Stewart and that Mr. Stewart did odd jobs for him. According to Mr. Stokes, Mr. Perkins said that he sent Mr. Stewart on an errand, and although he knew Mr. Stewart was a heavy drug user, he did not know he was in such bad shape.
Mr. Perkins, however, testified that he loaned the car to Mr. Stewart when Mr. Stewart asked to borrow his truck to go get something to eat. According to Mr. Perkins, Mr. Stewart did not appear to be under the influence of alcohol at the time. He further testified that he had no knowledge of any prior illegal drug or alcohol use by Mr. Stewart. Finally, Mr. Perkins testified that he never told anyone that Mr. Stewart was a drug addict. He, however, admitted that he had seen Mr. Stewart hanging around with individuals that he heard were drug users.
Generally, an owner of a vehicle is not personally liable for damages which occur while another is operating the vehicle. Harris v. Hamilton, 569 So.2d 1, 3 (La.App. 4th Cir.1990). Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner is himself negligent in entrusting the vehicle to an incompetent driver. Jones v. Western Preferred Casualty Company, 633 So.2d 667, 669 (La.App. 1st Cir.1993), writ denied, 94-0273 (La.4/4/94), 635 So.2d 1123.
Under the agent and/or employee theory, a master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a nonservant agent. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 751 (La.1987). Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance which is characteristic of the relation of master and servant does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. Lasseigne v. American Legion, Nicholson Post No. 38, 543 So.2d 1111, 1114 (La.App. 1st Cir.1989). Thus, the determination of whether a party may be held vicariously liable for the torts of another depends on whether the tortfeasor is characterized as *1219 a servant. Whetstone v. Dixon, 616 So.2d 764, 770 (La.App. 1st Cir.), writs denied, 623 So.2d 1333 (La.1993).
A servant has been defined as one employed to perform services in the affairs of another and who is subject to the other's control or right to control with respect to the physical conduct in the performance of the services. Ermert v. Hartford Insurance Company, 559 So.2d 467, 476 (La.1990). In contrast, a non-servant agent, although a contributor to the business of his master, is not such a part of his master's business that his physical acts and the time to be devoted to the business are subject to control. Blanchard [v. Ogima, 253 La. 34, 215 So.2d 902, 907 (1968).]
Whetstone, 616 So.2d at 770.
Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive. Barnett v. Globe Indemnity Company, 557 So.2d 300, 301 (La.App. 4th Cir. 1990); Reuther v. Landreneau, 480 So.2d 376, 379 (La.App. 4th Cir.1985), writ denied, 482 So.2d 628 (La.1986). However, an owner of an automobile who knowingly entrusts it to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle. Pereira Enterprises, Inc. v. Soileau, 551 So.2d 39, 40 (La.App. 1st Cir.1989); Danos v. St. Pierre, 383 So.2d 1019, 1021 (La.App. 1st Cir.1980), affirmed, 402 So.2d 633, 636-37 (La.1981). We note, however, that we can find no authority which places a duty on an owner or lender of an automobile to make an inquiry into one's driving habits or record when no reason exists to place the lender on notice of the borrower's disability or incompetence. Reuther v. Landreneau, 480 So.2d at 379.
In Pereira Enterprises, Inc. v. Soileau, 551 So.2d at 40-42, this court determined that, absent testimony or other evidence to indicate that an owner of an automobile knew or should have known that the driver was intoxicated or incompetent, the owner could not be held negligent for allowing her to drive his automobile. In Pereira Enterprises, the owner of an automobile met the operator in a lounge for the first time. The two were present in the lounge together for approximately forty-five minutes during which time the owner consumed one or two cans of beer. The owner did not know whether the driver had been drinking before he arrived at the lounge; the driver did not appear to be intoxicated in that her speech was not slurred noticeably and she had no difficulty in walking. Her blood alcohol content, however, was .28. The trial court determined that because the driver's blood alcohol content was .28 she would have been obviously impaired such that the owner knew or should have known she was intoxicated and was thus negligent for allowing her to operate his automobile. In reversing the trial court judgment, the appellate court determined that without expert testimony, the trial judge could not determine the effects of a .28 blood alcohol content based upon his own opinion. The appellate court noted that there was no testimony or other evidence to indicate that the owner knew or should have known that the driver was intoxicated or incompetent. During the short period of time they were together, the driver's condition did not appear to concern the owner.
In Reuther v. Landreneau, 480 So.2d at 377-79, despite her parents' specific orders not to permit anyone to operate her car, a teenage girl permitted her boyfriend to drive her car. Shortly thereafter, the boyfriend was involved in an automobile accident. In an action against the girl for negligent entrustment, the court determined that the *1220 teenage girl had no reason to believe that her boyfriend was an incompetent driver. The boyfriend testified that the girl had no knowledge of his previous tickets, nor was she aware that his driving privileges had been restricted by his parents because of poor grades. The court determined that, in the absence of evidence to show that the girl had knowledge or any reason to suspect that the boyfriend was a dangerous or incompetent driver, she was not placed on notice to make an inquiry.
Jones, 633 So.2d at 669.
The "mission of the owner" exception apparently has not often been applied in recent cases. Our research reveals very little development of this exception in the caselaw. This exception, however, is very similar to the employee/agent exception in that the owner is held vicariously liable for the driver's negligence due to the nature of the underlying relationship:
Imputation of negligence of one person to another is allowed only when there exists between them some relation of master or superior and servant or subordinate or other similar relationship. The relationship between them must be one invoking the principles of agency, or the persons must be cooperating in a common or joint enterprise, or the relationship between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person who was actually negligent.
Aupied v. Joudeh, 96-202, p. 4 (La.App. 5th Cir.4/9/97), 694 So.2d 1012, 1014, writ denied, 97-1583 (La.10/10/97), 703 So.2d 605.
In the present case, the trial court determined that Mr. Stewart was on a mixed mission, both for his own purposes and to pick up some building materials for Mr. Perkins. The trial court further determined that Mr. Perkins, as the master or principal of Mr. Stewart, should be held vicariously liable for both compensatory and exemplary damages. We disagree. The record does not support holding Mr. Perkins liable as a master or principal.
Similarly, we do not believe that Mr. Stewart was on a mission for Mr. Perkins at the time of the accident. Although there was testimony indicating that Mr. Stewart may have been en route to pick up some building materials for Mr. Perkins, nothing indicates a legal right on the part of Mr. Perkins to exercise any control over the actions of Mr. Stewart. Absent such a relationship between Mr. Stewart and Mr. Perkins, we do not believe this situation rose to the level of a "mission" of the owner.
The trial court properly rejected the theory of negligent entrustment. Although there is credible evidence in the record indicating that Mr. Perkins had knowledge that Mr. Stewart was a drug user, nothing in the record demonstrates that Mr. Perkins had reason to know on the morning of the accident that Mr. Stewart was incompetent to drive.
Accordingly, based on the facts and circumstances of this case, we reverse that portion of the trial court's judgment holding Mr. Perkins liable to appellees for compensatory and punitive damages.

Damages
Relieving Mr. Perkins of liability for appellees' damages, however, does not absolve Safeway of its liability. This is so because the policy of insurance covered the named insured and "any other person using [the owned] automobile to whom the named insured has given permission, provided the use is within the scope of such permission[.]" Thus, we must now review the general and special damages awarded by the trial court.[3]
*1221 Appellate courts should be mindful of the vast discretion of the trial court and only disturb damage awards that are an abuse of that discretion. As expressed by the Louisiana Supreme Court,
[t]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck [v. Stevens, 373 So.2d 498 (La.1979) ], this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La. 1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Our review of the record does not show an abuse of discretion by the trial court in the compensatory damages awarded. The evidence demonstrates that Mr. Stokes sustained a minor injury that resolved in a matter of weeks. He also sustained a back sprain which, the medical testimony of Mr. Stokes' family doctor, Joseph L. Mass, M.D., indicated was resolved by September of 1995. Nevertheless, at trial, Mr. Stokes testified that he continued to have back pain with strenuous activity.
In addition to his physical pain and suffering, evidence in the record demonstrates that witnessing the death of another human being affected Mr. Stokes mentally and emotionally. Furthermore, *1222 according to Mr. Stokes, he experienced a great deal of stress and tension worrying about and trying to recover from his financial losses as a result of the accident.
Mrs. Stokes testified that her husband changed after the accident. According to Mrs. Stokes, he was no longer able to help around the house and she could see that he was in pain. The Stokes' son, Michael L. Stokes, also testified that his father was no longer the fun person he had been prior to the accident. Michael also testified that he could see that his father was under a great deal of tension because of the financial loss sustained for the time period during which he did not have the use of his dump truck.
Finally, the record contains several estimates of business and income that Mr. Stokes lost during the weeks that his truck was being repaired that support the trial court's award for loss of income.
Thus, finding no abuse of discretion, we need not resort to prior awards to determine the highest or lowest point which is reasonably within that discretion. However, our review of similar cases shows that the damage award is neither above the highest point nor below the lowest point reasonably awarded in other cases. See, e.g., Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006 (La.1992); Samuel v. Vicknair, 31,049 (La.App.2d Cir.9/23/98), 718 So.2d 634; Gage v. Potts, 94-1542 (La.App. 1st Cir.4/7/95), 653 So.2d 1183.

CONCLUSION
For the foregoing reasons, that portion of the trial court's judgment in favor of appellees, Richard L. and Genia C. Stokes, and against appellant, Tommy Perkins, Jr., is reversed; judgment is rendered in favor of Tommy Perkins, Jr., and against appellees, Richard L. Stokes and Genia C. Stokes, dismissing their claims against him with prejudice. That portion of the trial court judgment entitling Credit General Insurance Company to a judgment against Tommy Perkins, Jr., on the cross claim for all amounts in which Credit General Insurance Company is cast in judgment is also reversed. In all other respects, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
GONZALES, J., dissents in part and assigns reasons.
GONZALES, J., dissenting in part.
I dissent in part. I disagree with the majority's reversal of ordinary damages against Mr. Perkins.[1] There is a reasonable basis in the record to support the trial court's determination that Mr. Stewart was on a "mission of the owner" for Mr. Perkins when the accident occurred.
Before this court can reverse on a factual determination, it must engage in a manifest error analysis. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The trial court apparently believed the testimony of Sgt. Darrell Arceneaux and Mr. Stokes, as well as some of the admissions by Mr. Perkins, regarding whether Mr. Stewart was on a mission for Mr. Perkins. This evidence constitutes a reasonable factual basis for the trial court's finding, and the majority errs in failing to give the trial court's finding deference. By concluding "we do not believe that Mr. Stewart was on a mission for Mr. Perkins at the time of the accident," the majority impermissibly substitutes its judgment and *1223 credibility determinations for that of the trial court.
NOTES
[1] Pursuant to a joint motion by appellees and their property insurance carriers, the property insurance carriers were dismissed from the suit on January 8, 1996, after they settled with appellees.
[2] On November 30, 1998, a "Partial Satisfaction of Judgment" notice was signed whereby appellees acknowledged (through their counsel of record) receipt of $3,478.93 from Credit General as satisfaction of the judgment in favor of appellees against Credit General.
[3] We note that the trial court did not hold Safeway liable for any punitive damages. However, no appeal was taken regarding this issue; thus, we need not address it.
[1] I agree with the trial court's reversal of punitive damages against Mr. Perkins.