850 So.2d 983 (2003)
Ora Lee WILLIS, et al., Plaintiffs-Appellants,
v.
Cassie MANNING and Allstate Insurance Company, Defendants-Appellees.
No. 37,259-CA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
Anthony J. Bruscato, Monroe, for Appellants.
*984 Hudson, Potts & Bernstein By: Mark J. Neal, Monroe, for Appellees Jay P. Adams.
Before WILLIAMS, GASKINS and MOORE, JJ.
GASKINS, J.
This appeal arises from a hit and run auto accident in Ouachita Parish. The plaintiffs, Ora Lee Willis and Pearline Moran, appeal from a trial court judgment that rejected their claims against Cassie Manning and her insurer, Allstate Insurance Company. We affirm.

FACTS
On December 22, 2000, Ms. Willis was driving her 1990 Oldsmobile in the inside eastbound lane of DeSiard Street in Monroe. Her sister, Ms. Moran, was a front seat passenger. As she approached the intersection of DeSiard Street and North 21st Street, Ms. Willis slowed to turn left onto North 21st Street. Just before 10:30 a.m., a white car traveling south on North 21st Street ran a stop sign, collided with the Willis car and sustained damage to its left front. This car drove into the parking lot of the mini-mart on the northeast corner of the intersection. After retrieving some documents from the glove box, getting out of the car, and talking to someone exiting the store, the driver then got back in the car and drove north on North 21st. According to the occupants of the Willis car and an independent witness, Sherman Henry, the driver of the hit and run vehicle was a young black male in his mid to late teens or early twenties. Ms. Moran wrote down the license plate of the car as HPZ 999.
The police determined that the license plate was for a 1988 white Dodge owned by Ms. Manning. Officers were dispatched to the Manning residence on Alabama Street. A white Dodge with damage to the front left was at the house. The police were told that Comalethia Manning, Ms. Manning's 24 year old granddaughter, was driving the car that morning. However, Comalethia emphatically denied being involved in or seeing an accident. The police were also told that the damage to the left front of the Manning car was caused by an accident on November 29, 2000; Ms. Manning produced a copy of a police report on that accident. Officer Jeff Pilcher initially ticketed Comalethia for the accident; however, he withdrew the ticket later that day after he concluded that the damage to the Manning car did not appear to be recent and after Mr. Henry verified that the driver of the hit and run car was male.
In April 2001, Ms. Willis and Ms. Moran filed suit against Ms. Manning and Allstate, alleging that Ms. Manning owned the 1988 Dodge Diplomat that struck them. They alleged that Ms. Manning negligently entrusted her car to an unknown driver who struck them. The sisters asserted that they were injured as a result of the collision and they sought damages. Ms. Manning and her insurer filed a general denial in which they asserted that she owned a Dodge Dynasty, not a Dodge Diplomat, and that it was not involved in the accident. Furthermore, they asserted that Ms. Willis was aware that Ms. Manning's vehicle was not the one that collided with her car and that her lawsuit was brought in bad faith.
A bench trial was held on May 14, 2002. The plaintiffs' theory of the case was that Ms. Manning's 12 year old grandson, Detarius[1] Hutchinson, was the actual hit and run driver.[2] However, when the boy was *985 produced in court, the plaintiffs agreed that he was not the driver. Plaintiffs' counsel then questioned Ms. Manning's relatives about other young men in the family who might have had access to the car. Comalethia testified that she was driving the car that morning but she was not involved in an accident. However, she admitted driving down DeSiard near 21st Street. Renisha Coleman, one of two cousins who was Christmas shopping with Comalethia that morning, likewise testified that they were not involved in an accident. (The other cousin, Rhonda Coleman, was not served and did not testify.)
In a written opinion, the trial court found credible the testimony of Ms. Manning, Comalethia, and Renisha that Comalethia was driving the car. Since the plaintiffs and Mr. Henry described the driver of the hit and run vehicle as a black male, the court concluded that the plaintiffs had not carried their burden of proving that the Manning vehicle was involved in the accident. The court also noted that the presence of the Manning car in the vicinity of the accident explained why Ms. Moran wrote down its license plate number. Judgment dismissing the plaintiffs' claims was signed on July 16, 2002.
The plaintiffs filed motions for new trial for reargument only and for submission of a map of Ouachita Parish. The motions were denied.
The plaintiffs appeal.

LAW
The plaintiff who alleges negligence has the burden of proving his case by a preponderance of the evidence. A preponderance of the evidence exists when the direct and circumstantial evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Wood v. Spillers, 37,087 (La.App.2d Cir.4/9/03), 843 So.2d 555.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. State Department of Public Safety and Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989).
To reverse the trial court's factual findings, the appellate court must find from the record that no reasonable factual basis exists for the findings and must determine that the record establishes the findings as clearly wrong or manifestly erroneous. Stobart, supra.
Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive. Stokes v. Stewart, XXXX-XXXX (La.App. 1st Cir.12/22/00), 774 So.2d 1215.

DISCUSSION
The evidence demonstrated that the Manning vehicle was involved in a car accident on November 29, 2000, less than a month before the instant collision. Comalethia was driving her grandmother's car when another car ran a red light and they collided in the intersection. The left front *986 and the immediate side area near the left front light were damaged on the Manning car. Insurance photos taken on December 1, 2000, confirm this minor to moderate damage. Aside from tacking the light back in, this damage was not repaired.
According to Officer Pilcher, the car that struck the plaintiffs would have been damaged on the front left quarter side. Photos of the Manning car taken in February 2001 do not show damage to that area. Officer Pilcher, while not an accident reconstruction expert, testified that he had investigated about one accident per day during his 14 years as a police officer. His evaluation of the Manning car was that the damage on it did not match up to the damage on the plaintiffs' car. Also, he saw no signs of fresh scuff marks or paint transfers that indicated that the Manning car had been in an accident earlier that day. He admitted that he forgot the information about the driver being male. Once he determined that issuing the ticket to Comalethia was a mistake, he withdrew it.
In support of their claims that the Manning car was the one involved in the accident, the plaintiffs testified that three weeks after the accident, they were driving down Alabama Street and saw the same driver washing the same car at the Manning house. However, Ms. Willis testified that the driver who struck them was wearing a cap that partially obstructed her view of his face. She could not see the face of the young man washing the car; he was also wearing a cap. She based her identification on her observation that he was wearing the same clothes as the driver who hit them. Ms. Moran likewise testified that the face of the driver who hit them was only partially visible due to a cap. She too testified that they saw the driver washing the car at a house on Alabama Street; however, she did not know the address of the Manning home.
Ms. Willis also testified that three to four weeks before the trial, she saw the same young man driving the same white car that hit them. However, Ms. Manning's testimony indicated that she sold her white car at least six weeks before the trial.[3]
Ms. Manning and Ms. Willis agreed that on the afternoon of the accidentafter Comalethia was ticketed but before the ticket was withdrawnMs. Manning came to Ms. Willis' house and they went outside to look at the Manning car. Ms. Manning testified that Ms. Willis admitted that her car was not the one involved in the accident. Ms. Willis denied making such a statement.
The plaintiffs also attack the credibility of the members of the Manning family who testified. In particular, they refer to Comalethia's initial statement to Officer Pilcher that she was not in the vicinity of the accident. At trial, she testified that she drove down DeSiard Street between 10:20 and 10:30 a.m. and that she was not involved in an accident nor did she see an accident. Her cousin and passenger Renisha likewise testified that they were not involved in an accident and that she did not see an accident either.
In arguing that the trial court committed manifest error, the plaintiffs rely heavily upon the police logs. However, we note that the testimony of the police officers raised serious questions about the accuracy of the police logs. Consequently, we must conclude that the police logs are of little or no assistance in resolving this matter.
Of the two elderly plaintiffsat trial in 2002, Ms. Willis was 79 and Ms. Moran *987 was 71only Ms. Moran observed the license plate. The trial judge concluded that the proximity of the Manning car near the time of the accident explained the fact that Ms. Moran wrote down its license plate number. Based upon the record before us, we cannot find that this conclusion was manifestly erroneous. Nor can we find manifest error in the trial court's determination that the Manning women were credible in their testimony that Comalethia was driving her grandmother's car on the morning of the accident. See Erwin v. State Farm Mutual Automobile Insurance Company, 34,127 (La.App.2d Cir.11/1/00), 771 So.2d 229, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 6.
In conclusion, we find that the plaintiffs failed to carry their burden of proving by a preponderance of the evidence that the Manning car was involved in the accident, much less that it was negligently entrusted to an incompetent driver.

CONCLUSION
The trial court judgment dismissing the plaintiffs' claims against the defendants is affirmed. Costs are assessed against the plaintiffs/appellants.
AFFIRMED.
NOTES
[1] In the record, this boy is also referred to as "Deterric."
[2] The plaintiffs named him as the driver in the joint pretrial statement.
[3] Ms. Manning testified that she sold the car in January 2002; however, a document pertaining to the sale was notarized April 1, 2002.