NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 1053

IRMA TROSCLAIR

VERSUS

MOSS MOTORS, INC., NEW YORK MARINE & GENERAL, DORIS S. PRUDHOMME, & SHELTER INSURANCE

*Judgment Rendered:* **APR 1 7 2024**

********

Appealed from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C693815

The Honorable William A. Morvant, Judge Presiding

********

Samantha M.B. Demuren
Jason A. Itkin
Caj Boatright
Roland Christensen
Noah M. Wexler
John Benjamin Bireley
Houston, Texas

and

A.M. "Tony" Clayton
Michael Fruge'
Richard J. Ward, III
Brilliant P. Clayton
Michael C. Hendry
Randall "Blue" Gay, Jr.
Port Allen, Louisiana

Counsel for Plaintiff/Appellant
Irma Trosclair

Brant J. Cacamo     Counsel for Defendants/Appellees
Sidney J. Angelle     Moss Motors, Inc. & New York Marine &
New Orleans, Louisiana   General Insurance Company


\*\*\*\*\*\*\*\*


**BEFORE:  GUIDRY, C.J., CHUTZ, AND LANIER, JJ.**


\*\*\*\*\*\*\*\*

2

**LANIER, J.**

The plaintiff, Irma Trosclair, appeals a summary judgment of the Nineteenth Judicial District Court granted in favor of the defendants, Moss Motors, Inc. and New York Marine & General Insurance Company (collectively Moss). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 11, 2019, Doris Prudhomme went to Moss's dealership in Lafayette, Louisiana to purchase a vehicle. Mrs. Prudhomme, who was eighty years old at the time and had been in a head-on collision on May 30, 2019, walked with a cane and was driven to the dealership by her niece, Lorita Menard. Prior to arriving at the dealership, Mrs. Prudhomme had an appointment with her orthopedic surgeon, who allegedly told Mrs. Prudhomme that she would be able to drive.[1] From there, Mrs. Prudhomme was driven to the dealership. Upon arriving at the dealership, Mrs. Prudhomme was greeted by salesperson Michelle Newland.

Through the course of her discussions with Ms. Newland, Mrs. Prudhomme was never asked why she walked with a cane, and Mrs. Prudhomme did not inform Ms. Newland about her previous accident or that she had not driven a vehicle in six months. Ms. Newland made a copy of Mrs. Prudhomme's driver's license to verify that it had not expired, and then brought Mrs. Prudhomme to a vehicle for her to test drive.

After Mrs. Prudhomme got into the driver's seat of the vehicle, she requested to test drive the vehicle in the dealership's parking lot before taking it on the public roads. However, Ms. Newland recommended that she instead test drive the vehicle on the public roads. Following Ms. Newland's recommendation, Mrs.

---

[1] This recommendation by the orthopedic surgeon comes from an excerpt from Mrs. Prudhomme's deposition and is arguably hearsay. We include it here simply for the purpose of outlining the course of events on December 11, 2019, and place no evidentiary value upon the orthopedic surgeon's statements.

Prudhomme drove the vehicle onto the public roadways. Following Ms. Newland's directions, Mrs. Prudhomme drove the vehicle into the street and minutes later rear-ended a vehicle driven by Ms. Trosclair.

Ms. Trosclair filed a petition for damages on February 10, 2020, naming as defendants Moss Motors, Inc., New York Marine & General Insurance Co. as its insurer, Mrs. Prudhomme, and Shelter Insurance as her insurer.[2] Ms. Trosclair claimed that the vehicle driven by Mrs. Prudhomme struck her vehicle while she was driving, resulting in injuries to her. Ms. Trosclair further claimed that Mrs. Prudhomme was driving the vehicle with Moss's permission.

On April 5, 2021, Moss filed a motion for summary judgment and attached as exhibits to the motion Ms. Trosclair's petition for damages, Moss's answers to Ms. Troslcair's interrogatories, Mrs. Prudhomme's deposition, and Ms. Newland's deposition. In its supporting memorandum, Moss argued that there was no genuine issue of material fact in that Moss did not negligently entrust one of its vehicles to Mrs. Prudhomme when she collided with Ms. Trosclair.

On December 6, 2021, the trial court signed a summary judgment in favor of Moss and dismissed Ms. Trosclair's claims against Moss with prejudice. Ms. Trosclair has appealed this judgment.

## ASSIGNMENT OF ERROR

Ms. Trosclair's sole assignment of error is that the trial court erred in granting summary judgment to Moss and dismissed her claims against it.

## STANDARD OF REVIEW

The burden of proof on a motion for summary judgment rests with the mover: here, the defendants. La. C.C.P. art. 966(D)(1). In this matter, the defendants will not bear the burden of proof at trial; the burden of proof at trial rests with the plaintiff.

---

[2] Although Moss Motors, Inc. and Mrs. Prudhomme are residents of Lafayette, venue of East Baton Rouge Parish is proper due to the foreign insurers named as parties. See La. C.C.P. art. 42(7).

4

Accordingly, once the defendants properly support their motion for summary judgment, then under La. C.C.P. art. 966(D)(1), they need only point out to the trial court the absence of factual support for one or more elements essential to the plaintiff's negligence claim. See *Pottinger v. Price*, 2019-0183 (La. App. 1 Cir. 10/23/19), 289 So.3d 1047, 1054.

Thereafter, the burden shifts to the plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact, or that the defendants are not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). The plaintiff may not rest on the mere allegations or denials in her pleadings, but her responses must set forth specific facts showing that there is a genuine issue for trial. If the plaintiff does not so respond, summary judgment, if appropriate, shall be rendered against her. See La. C.C.P. art. 967(B); See *Pottinger*, 289 So. 3d at 1054.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Pottinger*, 289 So.3d at 1054.

## DISCUSSION

Negligence claims under La. C.C. art. 2315 are examined using a Duty/Risk analysis. The Duty/Risk analysis is a set of five separate elements that takes into account the conduct of each party and the peculiar circumstances of each case. The plaintiffs bear the burden of proving each of the following elements: (1) the defendants' conduct was a cause-in-fact of the plaintiffs' injuries, (2) the defendants had a duty to conform their conduct to a specific standard, (3) the defendants breached that duty to conform their conduct to a specific standard, (4) the defendants' conduct was the legal cause of the plaintiffs' injuries, and (5) actual damages. *Joseph v. Dickerson*, 1999-1046, 1999-1188 (La. 1/19/00), 754 So.2d 912, 916. A negative answer to any of the elements of the Duty/Risk analysis prompts a no-liability determination. *Id.*

One of the necessary considerations in the Duty/Risk analysis is to determine what, if any, duties were owed by the respective parties. *Joseph*, 754 So.2d at 916. Generally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. *Id.* Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties. *Id.* Moss, as a lending car owner, has a duty to not entrust its car to another when it knows or has reason to know that the borrower is likely to use the car in a manner involving an unreasonable risk of physical harm because of the borrower's age, inexperience, intoxication, incompetence, or otherwise. Restatement (Second) of Torts § 390 (1965). Having established that Moss owed a duty, the question then becomes whether it breached that duty by failing to act in a reasonable and prudent manner. See *Joseph*, 754 So.2d at 916.

In support of the motion for summary judgment, Moss submitted the deposition of Mrs. Prudhomme, who testified that she was walking with the aid of a cane on the day of the accident. Upon entering the dealership, Mrs. Prudhomme was greeted by Ms. Newland, and Ms. Newland obtained a copy of Mrs. Prudhomme's driver's license prior to the test drive. Mrs. Prudhomme testified that other than taking her driver's license, Ms. Newland did not ask her any questions about whether she was fit to drive a vehicle. Neither Mrs. Prudhomme nor Ms. Menard offered any information to Ms. Newland about Mrs. Prudhomme's fitness to drive or about her prior accident on May 30, 2019.

The test drive vehicle shifted from park to drive through use of a dial. Mrs. Prudhomme was not familiar with how to use the dial, so Ms. Newland demonstrated it for her. Mrs. Prudhomme then told Ms. Newland she wanted to test drive the vehicle around the parking lot. Ms. Newland then said, according to Mrs. Prudhomme, "Oh, no no ... I want to show you something." Mrs.

6

Prudhomme testified she wanted to drive in the parking lot because she "hadn't driven in so long," but she did not voice this reason to Ms. Newland.

Ms. Newland wanted to demonstrate the "auto-hold" feature of the vehicle, which prevents the vehicle from moving forward or backward when the driver takes her foot off the brake. To do so, Ms. Newland directed Mrs. Prudhomme to drive to and stop at the inclined exit from the parking lot to Surrey Street. Mrs. Prudhomme stated she felt comfortable driving the vehicle at that point and turned onto Pinhook Road. Pinhook Road has four lanes, and Mrs. Prudhomme got into the left lane to turn onto Carmel Drive. Ms. Trosclair's vehicle was ahead of Mrs. Prudhomme in that lane. As Mrs. Prudhomme approached Ms. Trosclair's vehicle, she attempted to apply the brake but stated that the brake was not working. Ms. Newland told Mrs. Prudhomme to apply the brake, and Ms. Menard stated to Ms. Newland that Mrs. Prudhomme's foot was on the brake. It was at that point that the vehicle driven by Mrs. Prudhomme collided with Ms. Trosclair's vehicle.

Mrs. Prudhomme testified that earlier in the day, she had an examination with her orthopedic surgeon, and she asked him if she was in a suitable condition to drive. After he watched her walk with her cane, sit down, and move her legs, he told her that she could drive. Mrs. Prudhomme also stated she had not consumed alcohol or taken any drugs prior to driving the vehicle.

Moss also submitted the deposition of Ms. Newland, who testified that when she greeted Ms. Prudhomme at the dealership, she was not aware that Mrs. Prudhomme had been driven there by Ms. Menard. Mrs. Prudhomme informed Ms. Newland that she was interested in buying a car, and that she had been researching vehicles on the market and was particularly interested in a BMW SUV that was sold by Moss. Ms. Newland did not recall Mrs. Prudhomme walking with a cane but stated she had many elderly clients who walk slowly and therefore did not notice anything out of the ordinary with Mrs. Prudhomme.

7

Ms. Newland stated Mrs. Prudhomme specified the model of the vehicle she was interested in, because she felt it most closely resembled the vehicle she previously drove. She said Mrs. Prudhomme expressed interest in the safety features of the vehicle she wanted to test drive, which is why Ms. Newland wanted to show her the auto-hold feature. She also showed Ms. Prudhomme how to shift the vehicle from park to drive. Before Mrs. Prudhomme started driving, Ms. Newland adjusted the seat, steering wheel, and mirrors for Mrs. Prudhomme and observed that she looked comfortable in the vehicle. Ms. Newland did recall Mrs. Prudhomme saying initially that she wanted to test drive in the dealership parking lot but stated the parking lot was too small for a sufficient test drive. On two occasions, Ms. Newland asked Mrs. Prudhomme if she wanted to leave the parking lot. Mrs. Prudhomme then drove through the parking lot to get to Surrey Street, where Ms. Newland demonstrated the auto-hold feature.

As they continued with the test drive, and when Ms. Newland saw Mrs. Prudhomme approach Ms. Trosclair's vehicle, she told Mrs. Prudhomme to apply the brake and "braced" for an imminent collision. She did not recall Mrs. Prudhomme saying that the brake was not working but did remember Mrs. Prudhomme having both of her hands on the steering wheel. It was not until after the accident that Ms. Newland was informed that Mrs. Prudhomme had not driven since her accident on May 30, 2019. She stated that Mrs. Prudhomme had not given her that information.

In response to Moss's motion for summary judgment, Ms. Trosclair submitted as exhibits the depositions of Mrs. Prudhomme and Ms. Newland, as well as depositions of Ms. Menard and Coury Moss of Moss Motors, Inc.[3] Ms.

---

[3] Mr. Moss's testimony is not relevant to the issue of negligent entrustment, since he was not present during Ms. Newland's discussions with Mrs. Prudhomme in choosing a vehicle, nor was he present for the test drive. Furthermore, he did not give any relevant testimony as to Moss's test driving policies or procedures.

Menard stated that Mrs. Prudhomme's orthopedic surgeon said she was "good to go" and released her. She thought, but was not entirely positive, that the orthopedic surgeon stated specifically that Mrs. Prudhomme was cleared to drive but remembered that the surgeon "cleared her of everything." She stated that Mrs. Prudhomme was walking with a cane on the day of the accident. Ms. Menard then drove Mrs. Prudhomme to the dealership.

At the dealership, Mrs. Prudhomme and Ms. Menard were met by Ms. Newland, who began discussing with Mrs. Prudhomme what kind of vehicle she was interested in. Ms. Newland showed Mrs. Prudhomme an SUV, but Mrs. Prudhomme said that the vehicle was too large for her. At that time, Ms. Newland showed Mrs. Prudhomme a smaller SUV, which Mrs. Prudhomme test drove. She did not recall any discussion between Mrs. Prudhomme and Ms. Newland concerning the previous doctor visit or the previous accident of May 30, 2019. Mrs. Prudhomme entered the vehicle without assistance.

Ms. Menard did not remember Ms. Newland explaining the vehicle's features, such as how to put the vehicle in park or drive. She did remember, however, the seat and steering wheel being adjusted for Mrs. Prudhomme. (She stated that the test drive and the route to take was Ms. Newland's suggestion. Ms. Menard testified that if she had any concerns with Mrs. Prudhomme's driving the vehicle, she would have stated such, but she did not. However, she did recall Mrs. Prudhomme requesting to test drive in the parking lot, but Ms. Newland stated the vehicle needed to be taken on the road. Ms. Menard stated she heard Mrs. Prudhomme tell Ms. Newland she was uncomfortable with leaving the parking lot. In the moments leading up to the accident, Ms. Menard did remember Mrs. Prudhomme's foot being on the brake.

Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower, *unless* he had or should have had

9

knowledge that the borrower was physically or mentally incompetent to drive. *Stokes v. Stewart*, 1999-0878 (La. App. 1 Cir. 12/22/00), 774 So.2d 1215, 1219. However, an owner of an automobile who *knowingly* entrusts it to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle. *Id.*

The concept of negligent entrustment focuses on the ability of the driver to operate the vehicle safely. See *Cowan v. Jack*, 2005-0175 (La. App. 4 Cir. 12/21/05), 922 So.2d 559, 565, writ denied, 2006-0174 (La. 4/24/06), 926 So.2d 544. In order to prove a claim of negligent entrustment, a plaintiff must show that a lender had actual or constructive knowledge that the borrower was incompetent or had an apparent disability at the time of the entrustment. See *Cosey On Behalf of Hilliard v. Flight Academy of New Orleans, LLC*, 2019-0756, 2019-0785 (La. App. 4 Cir. 11/12/20), 365 So.3d 76, 89, writ denied, 2021-00083 (La. 3/23/21), 312 So.3d 1097.

We can find no authority which places a duty on an owner or lender of a vehicle to make an inquiry into one's driving habits or record when no reason exists to place the lender on notice of the borrower's disability or incompetence. *Stokes*, 774 So.2d at 1219. In *Stokes*, a dump truck driven by Stokes was hit head-on by a vehicle driven by Stewart, which left its lane of travel. The vehicle driven by Stewart was owned by a Mr. Perkins. Stewart was killed by the collision, and urine samples taken from Stewart tested positive for cocaine. A blood sample taken from Stewart revealed that his blood alcohol level was .1 percent. *Stokes*, 774 So.2d at 1217.

Stokes filed suit against the estate of Stewart, Perkins, and others. Following a bench trial, a judgment was rendered in favor of Stokes and against the estate of Stewart and Perkins. Perkins appealed. *Stokes*, 774 So.2d at 1217. Although the trial court had found Perkins vicariously liable for the damages

10

caused by Stewart, it rejected the theory of negligent entrustment. This court both reversed the trial court's finding of vicarious liability on the part of Perkins and affirmed the rejection of negligent entrustment. As to the theory of negligent entrustment, this court acknowledged there was credible evidence that Perkins knew Stewart was a drug user, but the record did not demonstrate that Perkins had reason to know on the day of the accident that Stewart was incompetent to drive. *Stokes*, 774 So.2d at 1220.

In the instant case, the evidence presented to the trial court indicates that Ms. Newland would have observed that Mrs. Prudhomme was elderly but may not have noticed that Mrs. Prudhomme walked with the aid of a cane. Regardless, Ms. Newland testified that she had numerous elderly clients who walked slowly, so even if she had noticed Mrs. Prudhomme walking with a cane, it would not be enough to put Ms. Newland on notice that Mrs. Prudhomme was unfit for driving.

Further, although it appears Mrs. Prudhomme voiced that she was uncomfortable with test driving the vehicle outside the dealership parking lot, she did not tell Ms. Newland why she felt that way. She never explained to Ms. Newland that she was in a prior accident on May 30, 2019, and she did not state that she had not driven since that time. Ms. Menard, who also would have known these facts, did not tell them to Ms. Newland. In fact, Ms. Menard testified she would have stated if she had concerns with Mrs. Prudhomme driving, but she did not.

The record even indicates that no one, not even Mrs. Prudhomme, thought she was unfit to drive. Prior to going to the dealership, her orthopedic surgeon's examination led her to the conclusion that she was fit to drive, and Ms. Menard then drove her to the dealership. Upon entering the dealership, Mrs. Prudhomme discussed her interest in test driving certain BMW SUVs that she had independently researched. Although elderly, Mrs. Prudhomme's actions do not

11

present anything out of the ordinary that Ms. Newland should have noticed that would have indicated to her that Mrs. Prudhomme was either physically or mentally incapable of driving. Based on the aforementioned jurisprudence, it was not incumbent upon Ms. Newland to inquire further into Mrs. Prudhomme's condition and could rely upon her own observations of Mrs. Prudhomme and the information that was presented to her.

Moss successfully presented evidence to show that they did not negligently entrust one of their vehicles to Mrs. Prudhomme. The burden then shifted to Ms. Trosclair to show that a material issue of fact still existed. Mrs. Trosclair presented much of the same evidence that Moss presented, and the inclusion of Ms. Menard's deposition corroborated much of Mrs. Prudhomme's and Ms. Newland's testimony. Any remaining disputed facts are not material to the issue of negligent entrustment. Ms. Trosclair has failed in her burden of proving that an issue of material fact remained as to whether Moss breached its duty to not knowingly entrust its vehicle to a person who was incompetent to drive.

## DECREE

The summary judgment of the Nineteenth Judicial District Court in favor of the appellees Moss Motors, Inc. and New York Marine & General Insurance Company, and against the appellant, Irma Trosclair, is affirmed. All costs of this appeal are assessed to Ms. Trosclair.

**AFFIRMED.**