McClendon, j.
| gThis case arises out of a tragic automobile accident that resulted in the death of the plaintiffs’ son, Dr. Kristofor Toups.[1] The plaintiffs, Randy J. Toups and Deborah H. Toups, appeal a grant of summary judgment in favor of Adele B. Dantin, the wife of James G. Dantin,[2] the driver of the *35 automobile that collided with the pickup truck driven by Dr. Toups. For the reasons that follow, we affirm. ..
FACTS AND PROCEDURAL HISTORY
On the morning of January 20, 2011, while driving southbound on Louisiana Highway 1, in Lafourche Parish, James Dantin was operating a 2009 Nissan Maxi-ma owned by his wife, Adele Dantin. After passing a vehicle in a non-passing zone, at a high rate of speed, Mr. Dantin rear-ended the 2007 Chevrolet Silverado pickup truck being operated by Dr. Toups. As a result of the impact, Dr. Toups’ truck was forced into the opposite lane of the two-lane highway, where it collided head-on with a Peterbilt garbage truck, fatally injuring Dr. Toups. Toxicology tests revealed that Mr. Dantin had alcohol, al-prazolam (a generic form of Xanax), and benzoylecgonine (a metabolite of cocaine) in his bloodstream.[3]
On January 17, 2012, the Toupses filed a petition for damages for the wrongful death of their son against Mr. Dantin, Ms. Dantin, and their insurers. They alleged that Mr. Dantin had a history of drug and alcohol related charges for more than thirty years, including in excess of fifteen arrests for driving under the influence of drugs and alcohol. The Toupses further asserted that since his release from jail, in August 2009, in connection with a previous driving while intoxicated conviction, Mr. Dantin was prohibited from operating a vehicle that was not equipped with an ignition interlock device and that the Maxima that Mr. Dantin was operating at the time of the accident did not have an ignition interlock device. 1 °In addition to asserting a cause of action against Mr. Dantin, the Toupses asserted a cause of action against Ms. Dantin. The Toupses alleged that Ms. Dantin knew that Mr. Dantin was prohibited from driving a vehicle- without an ignition interlock device and that Ms. Dantin knew or should have known that Mr. Dan-tin on occasion operated one or more of their vehicles that was not equipped with an ignition interlock device. They contended that Ms. Dantin authorized Mr. Dantin to use the vehicles in which she had an ownership interest and which were not equipped with an ignition interlock device. The Toupses. further asserted that Ms. Dantin was negligent for her breach of a legally imposed duty of reasonable care; negligent entrustment; failure to secure property within her custody; failure to install property safety equipment in vehicles available for the use and operation by Mr. Dantin; reckless disregard for the safety of the public; and other negligent acts and omissions.
On June 80, 2014, Ms. Dantin filed a motion for summary judgment,, in which she asserted that, as a matter of law, she was not legally responsible for the January 20, 2011 accident. Specifically, she contended that there was no evidence indicating that she gave Mr. Dantin permission to drive the Maxima at the time of the accident. Following a hearing on August 15, 2014, the trial court granted Ms. Dantiris motion for summary judgment, dismissing the Toupses’ claims against her with prejudice. A judgment was signed on August 28,2014, and the Toupses appealed.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96- *36 1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together- with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is-no genuine issue , of material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2).
|4The burden of proof to show that no material factual Issue exists is on’the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial, the mover is not required to negate all essential elements of the adverse party’s claim. Rather, the mover must point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(C)(2).
An appellate court’s review of a summary judgment is a de novo review based on the evidence presented to the trial court, using the same criteria used by'the trial court in deciding whether a summary judgment should be 'granted. Buck’s Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1 Cir. 2/16/01), 808 So.2d 428, 431. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Guardia v. Lakeview Regional Medical Center, 08-1369 (La.App. 1 Cir. 5/8/09), 13 So.3d 625, 628.
DISCUSSION
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of LSA-C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard' of care; (2) the defendant’s conduct failed to'conform to the appropriate standard of care; (3) the defendant’s substandard conduct was a cause-in-fact .of the plaintiffs injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) the plaintiff was damaged. Brewer v. J.B. Hunt Transport, Inc., 09-1408 (La.3/16/10), 35 So.3d 230, 240. Whether a duty is owed is a question of law; whether a defendant has breached a duty owed is a question of fact. Id.
| (¡The threshold question in a duty-risk analysis is whether the defendant owed a duty to the plaintiff. Ponceti v. First Lake Properties, Inc., 11-2711 (La.7/2/12), 93 So.3d 1251, 1252. In deciding whether to impose a duty in a particular ease, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory/jurisprudential, or ¿rising from general principles of fault) to support the claim that the defendant owed him a duty. Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La.3/10/06), 923 So.2d 627, 633. Thus, the duty-risk analysis requires the court to take into account the conduct of each party as well as the particular circumstances of the case. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229, 233. In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic fac *37 tors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiffs harm and the defendant’s conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant’s activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving. Id.; see also Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, 766. Generally, there is an almost universal legal duty on the-part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. Joseph v. Dickerson, 99-1046 (La.1/19/00), 754 So.2d 912, 916.
Ordinarily, an owner of a vehicle is not personally liable for the damages that occur while another is operating the vehicle. Stokes v. Stewart, 99-0878 (La.App. 1 Cir. 12/22/00), 774 So.2d 1215, 1218. Exceptions to this occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, or when the owner is herself negligent in entrusting the. vehicle to an incompetent driver. Id. Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence | (¡of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive. Id., at 1219. However, one who knowingly entrusts an automobile to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle. Id. Stated another way, one who loans a car to another when the lender knows or has reason to know that the borrower is likely to use the car in a manner involving an unreasonable risk of physical harm, because of-the borrower’s youth, inexperience, - intoxication, incompetence, or otherwise, can be held liable to a third party for damage caused by the borrower. Dickerson, 754 So.2d at 916; Thistlethwaite v. Gonzalez, 12-130 (La.App. 5 Cir. 12/18/12), 106 So.3d 238, 257.
In support of her . motion for summary judgment, Ms. Dantin submitted excerpts from the deposition of Mr. Dantin, as well as excerpts from her own deposition; a copy of the petition and amended petition for damages; her affidavit; and the affidavit of the state trooper , who investigated the accident. In opposition to the summary judgment motion, the Toupses introduced a copy of the Dantins’ renewal policy package for their automobile, insurance policy with Allstate Property and Casualty Insurance Company for the period from August 28, 2010 to February 28, 2011; a copy of a bill of information and speeding ticket regarding an incident on November 26, 2010, showing that 'Mr. Dantin was operating the Maxima; excerpts from the deposition of Ms. Dantin; and excerpts from the deposition of Mr. Dantin. At the hearing, the Toupses introduced into evidence both depositions in their entirety, including exhibits.
The record shows that Mr. Dantin and Mrs. Dantin were married in 1979. Mr. Dantin had a long history of driving, while intoxicated, and prior to this accident, he had. six previous convictions for driving while intoxicated.[4] These convictions l7all *38 occurred during the Dantins’ marriage, and Ms. Dantin was aware of the convictions and sentences. In her deposition, Ms. Dantin acknowledged that she knew that Mr. Dantin had a problem with alcohol and drugs and stated that it was a difficult issue for him. She also stated that she knew he drank “occasionally.” It is also undisputed that after his release from prison in August 2009, Ms. Dantin knew that as a condition of his probation, Mr. Dantin was prohibited from operating a motor vehicle unless it was equipped with a functioning ignition interlock device. See LSA-R.S. 32:378.2, 32:667, and 14:334.
Ms. Dantin testified that when Mr. Dantin was released from prison in 2009, the only automobile the Dantins owned was a 1998 Chevrolet pickup truck, and the interlock device was installed thereon. She stated that the truck was purchased from her mother-in-law around 2004 and that she was the primary driver of the truck prior to the installation of the ignition interlock device. Ms. Dantin further testified that she subsequently purchased the Maxima to use as her personal vehicle to get to and from her work as a nurse, as she had difficulty using the ignition interlock device. When Ms. Dantin was questioned about the Maxima, the following discussion took place:
Q. The Maxima, was that a vehicle that you both drove?
A. That was me, and I am the one that picked out the Maxima. My husband, he really didn’t have any involvement with that. I picked it out. My son came with me. He had some experience with Máximas, so he came with me. James was offshore. I picked out the Maxima.
Q. Did he ever drive the Maxima?
A. No. That was my car for work.
She further stated that she only had one key for the Maxima that she kept in her purse when she was not operating the car. When specifically asked if she ever gave Mr. Dantin permission to drive the Maxi-ma, Ms. Dantin replied, “[n]o” and also stated that she had no knowledge that he ever used the Maxima.[5] Conversely, | sMr. Dantin stated that he drove the Maxima “a couple of times” but gave no testimony that his wife had any knowledge of said use, and the record contains no evidence whatsoever that Ms. Dantin had any previous knowledge of Mr. Dantin’s use of the vehicle.[6]
Further, Mr. Dantin testified that in January 2010, after his release from prison and while on probation, he purchased a new Corvette titled in his name alone and paid cash. Ms. Dantin testified that she knew of the purchase beforehand, but stated that Mr. Dantin was the one who picked it out. She further testified that the Corvette was “always a dream car” of hers. Ms. Dantin stated that on the day of the accident, the Corvette was in the body shop for repairs due to the fact that she *39 had “clipped the side of a curb” and damaged the side of the car. Mr. Dantin testified, however, that on the day of the accident, the Corvette was blocked by the Maxima in the driveway, so, he took the Maxima.
With regard to the accident, Ms. Dantin testified that on the evening of January 19, 2011, when she got home from work, she noticed nothing unusual about Mr. Dan-tin’s behavior. She stated that she took a shower, ate supper, and watched a little television. Mr. Dantin went into a detached room at the back of the house that was part of the garage. Ms. Dantin went to bed at her usual time, approximately 9:00 p.m. When she got up the next morning at 5:00 a.m. to get ready for work, she noticed that her car, the Maxima, was not in the driveway. Ms. Dantin stated that she went out to the back room to see if Mr. Dantin was there, but he was not, and she assumed he had left in the car. She indicated that she was worried because her car would not be back in time for her to go to work. She testified that she had to go to work and did not like being late and had to call her son for a ride to work.
IflMs. Dantin avers that there is no genuine issue of material fact regarding whether she negligently entrusted the Maxima to Mr. Dantin on the day of the accident and that the record establishes she did not. The Toupses contend, however, that the essence of this case involves Ms. Dantin’s motive, intent and knowledge of Mr. Dan-tin’s use of other vehicles owned by the Dantins. They assert that genuine issues of material fact exist concerning whether Ms. Dantin knew that Mr. Dantin used vehicles owned by the Dantins to circumvent the ignition interlock device and whether she was complicit in a scheme to help him do so by purchasing a vehicle that would allow him to drive without complying with his probationary conditions requiring the interlock device.
The Toupses refer to LSA-R.S 14:334(C), which provides:
No person shall intentionally attempt to tamper with, defeat, or circumvent the operation of an ignition interlock device.
Additionally, LSA-R.S. 32:378.2(E) provides:
No person shall tamper with or circumvent the operation of an ignition interlock device.
The trial court found that the Toupses failed to present sufficient evidence to establish that they would be able’ t'o satisfy their' evidentiary burden of proof at trial regarding their ' negligent entrustment claim. Upon our de novo review of the entire record, we agree that the Toupses failed to produce factual support sufficient to establish that Ms. Dantin entrusted the Maxima to her husband or that she had any knowledge of his impairment on the day of the accident. Accordingly, their claim of negligent entrustment must fail. The record simply does not éstablish any genuine issue of material fact as to this theory of recovery as it pertains to the Maxima.
Further, we are unable to find that Ms. Dantin owed a legal duty to police or supervise the activities of Mr. Dantin or to install an ignition interlock device on the vehicles. This court has been.reluctant to impose a duty on any third party, whether spouse or otherwise, where the negligent acts of an intoxicated individual cause injury to another. As we stated in Miller v. Tauzin, 14-1701 (La.App. 1 Cir. 6/5/15), 174 So.3d 1175, 2015 WL 3537559.(unpublished opinion), citing West v. Hilton Hotels Corp., 97-2842 (La.App. 4 Cir. 5/13/98), 714 So.2d 179, 183, “there is no legal basis or authority in Louisiana which imposes a duty on a spouse to prevent the *40 intoxication of the other spouse or even to warn third persons of the spouse’s intoxicated condition.” See also Doyle v. Murphy, 13-1730 (La.App. 1 Cir. 5/2/14), 2014 WL 3611832 (unpublished opinion) (The trial court did not err in granting motion for summary judgment and sustaining objection of no cause of action, based on its conclusion that the mother did not owé1 a duty to report to law enforcement that her son was driving under the influence of alcohol, even despite ■ legitimate concerns that an accident might occur.); Butz v. Lynch, 97-2166 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1175, writ denied, 98-1247 (La.6/19/98), 721 So.2d 473 (The trial court did. not err in granting summary judgment and dismissing claims, against automobile guest passenger where plaintiffs alleged that the guept passenger’s unreasonable conduct in participating in the inhalation of a dangerous propellant with the driver while driving rendered the guest passenger liable for automobile accident with plaintiffs.); and Danos v. St Pierre, 38.3 So.2d 1019, 1022 (La.App.. l.Cir.1980), affirmed in part, 402 So.2d 633 (La.1981) (Mere Knowledge or awareness of the intoxicated condition of the driver did not impose a duty upon a guest passenger to protect against the risk that the intoxicated driver may injure a third party in an automobile accident.). ■
■ However, our inquiry does not end there. In their petition,- the Toupses also allege that Ms'. Dantin breached her legally imposed duty of reasonable care and that she had a reckless disregard for the safety of the public. In addition to Ms. Dantin’s purchase of the Maxima, she knew beforehand of Mr. Dantin’s purchase of the Corvette, even though she claimed the Corvette was purchased for her. -The Corvette was in Mr. Dantin’s name,'and he was an insured driver under their automobile policy. Given the particular facts of this ease, Ms. Dantin clearly may have had a duty not to actively participate in procuring a vehicle for Mr. Dantin’s use for the purpose of circumventing the ignition interlock system. Nevertheless, even' if there exists a material issue of fact as to whether Ms. Dantin participated in a scheme to obtain the Corvette for the purpose of Mr. Dantin In avoiding the ignition interlock device, the tragic accident in this matter occurred while Mr. Dantin was operating the Maxima," not the Corvette. The record "is simply insufficient to establish that Ms. Dantin either procured or provided the Maxima for Mr. Dantiris use.
Accordingly, despite the unsettling facts of this case, we are constrained to find that the Toupses failed to present sufficient evidence to satisfy their evidentiary burden at trial, and Ms. Dantin is entitled to summary judgment.
CONCLUSION.
. Fpr the above and foregoing reasons, we affirm the trial court’s August 28, 2014 judgment, granting summary judgment in favor of ■ Ms. Dantin, and dismissing the Toupses’ claims against her with prejudice. All costs associated with this appeal are assessed against Randy J. Toups and Deborah H. Toups.
AFFIRMED.
WHIPPLE, C.J., dissents for reasons assigned. •

. The record indicates that Dr. Toups was a veterinarian working for Lafourche Animal Hospital.

. The Dantins apparently divorced sometime after the filing of this lawsuit, and Ms. Dantin now goes by Adele Bourg. Because the lawsuit was filed against Adele B. Dantin, we will continue to refer to her by that name.

. Mr. Dantin. was subsequently charged with "vehicular homicide & operating a Vehicle while intoxicated 4th.” He pled guilty to vehicular homicide and was sentenced to thirty years imprisonment.' '

. The dates of the previous arrests and convictions for operating a vehicle while intoxicated were: arrested on September 30, 1992, and convicted on January 21, 1993; arrested on March 11, 1996, and convicted on September 25, 1996; arrested on December 4, 1996, and convicted on April 5, 2001; arrested on September 28, 1997, and convicted on April 11, 2001; arrested on June 23, 2000, and convicted on April 11, 2001; and arrested on *38 June 17, 2004, and convicted on September 8, 2004. Mr. Dantin's arrest history also includes a number of other violations.

. Although the record shows that on November 26, 2010, Mr. Dantin was arrested for traveling 94 mph in a 55 mph speed zone while driving the Maxima, Ms. Dantin denied that she had any knowledge of Mr. Dantin's use of her vehicle. When presented with a copy of the ticket at her deposition, Ms. Dan-tin stated, “I am surprised.”

. The Dantins also owned a Harley Davidson motorcycle that was purchased new in 2004. No ignition interlock device was installed on the motorcycle after Mr. Dantin’s release from prison. Mr. and Ms. Dantin gave conflicting testimony as to Mr. Dantin's use of the motorcycle after his release. Ms. Dantin said he did not drive it, but Mr. Dantin testified that he may have driven it “a couple of times” after his release.